JOHN DESOT v. OCTAVIA ROSS.

95    81
112   423
95    81
f141  369

*Subrogation—Payment of mortgage.*

1. A stranger to the title cannot, by payment of the whole or any portion of a mortgage, become subrogated to the rights of the mortgagee.[1]

2. An agreement by a mortgagor and his wife to pay to their daughter a sum of money advanced by her to pay an installment of interest on the mortgage, which is afterwards assigned to her, the design of the agreement being, as stated therein, "to secure the payment of said money, it being for money paid by her as aforesaid," cannot perform the office of an agreement that the mortgage shall remain a security for the money so paid.

Appeal from Macomb. (Canfield, J.) Argued January 19, 1893. Decided March 10, 1893.

Bill for the discharge of a mortgage. Defendant appeals. Decree affirmed. The facts are stated in the opinion.

*Lungerhausen & Erskine,* for complainant.

*William B. Jackson,* for defendant.

MONTGOMERY, J. Complainant is the father of the

---

[1] See note to *Bush v. Wadsworth,* 60 Mich. 255, for a collection of Michigan cases on this subject.

defendant.   In March, 1881, complainant mortgaged cer-
tain premises owned and occupied by him to Oliver Chapa-
ton for $1,022.   This mortgage was assigned to defendant
in 1888.   December 26, 1891, complainant tendered to the
defendant $1,341.12, and demanded a discharge of the
mortgage.   The defendant refused to discharge the mort-
gage unless she was repaid the further sum of $150 and
interest, which she had advanced to complainant to pay
the installments of interest falling due upon the same
mortgage before she became the purchaser of it.   The bill
prays a discharge of the mortgage on payment of the
amount of the tender.

It appears by the testimony that the defendant in June,
1882, and in February, 1884, advanced in the aggregate
$150 to pay the installments of interest before referred to,
taking an agreement in writing in the following form, signed
by the complainant and his wife:

"$80.   One day after date we promise to pay Octavia Ross
or bearer eighty dollars, with use, value received.   The
design of this paper is to secure the payment of the above
sum of money, it being for money paid by said Octavia Ross
to Oliver Chapaton for interest due on a real-estate mortgage
given by us to him.
"*Mount Clemens, June* 17, 1882."

The circuit judge found as a fact that there was no in-
dependent agreement that the defendant was to be subro-
gated to the lien of the mortgage to the amount of these
payments, and this finding is fully justified by the proofs.
Indeed, it is not seriously contended that there was such
an agreement, but it is strenuously insisted that the written
instrument itself is sufficient evidence of an intent that the
defendant should retain a lien on the land for the money
advanced.   We think the instrument cannot be construed
as creating a lien on specific property.   It amounts to no
more than a promise to pay the sum advanced, with interest.

It is true, it recites that the paper is to secure the payment of the amount, and it is also recited that the money was paid on the mortgage in question; but the recital cannot perform the office of an agreement that the mortgage shall remain a security for the money.

No such relation of defendant to this property existed as entitled her to subrogation without an express agreement. She was a stranger to the title, and as such could not, by payment of the whole or any portion of the mortgage, become subrogated to the rights of the mortgagee. In *Kelly v. Kelly,* 54 Mich. 47, it was said:

"In order to lay the foundation for an equitable lien upon real estate there must exist—*First,* a contract in writing out of which the equity springs, sufficiently indicating an intention to make some particular property, therein identified, a security for the debt or obligation, or whereby the party promises to convey or assign or transfer the property as security; * * .* or, *second,* in the absence of such contract, where, from the relations of the parties,· equity will declare a lien out of considerations of right and justice, based upon those maxims which lie at the foundation of equity jurisprudence. Such are the cases when one joint owner, acting in good faith and for the joint benefit, makes permanent improvements upon the property which add a permanent value to the estate; or when a party, innocently and in good faith, supposing himself to be the owner, makes permanent improvements, or repairs which permanently enhance the value of the property,—the real owner, when he seeks the aid of equity to establish or enforce some equitable right or claim to the property, upon the principle. that he who asks equity must do equity, will be required to pay the amount expended."

See, also, *Shinn v. Budd,* 14 N. J. Eq. 237; *Brice v. Watkins,* 30 La. Ann. 21; *Sandford v. McLean,* 3 Paige, 122. In the last-mentioned case it was said:

"It is only in cases where the person advancing money to pay the debt of a third party stands in the situation of a surety, or is compelled to pay it to protect his own rights, that a court of equity substitutes him in the place of the

creditor as a matter of course, without any agreement to that effect. In other cases the demand of a creditor which is paid with the money of a third person, and without any agreement that the security shall be assigned or kept on foot for the benefit of such third person, is absolutely extinguished."

The decree, which was in accordance with these views, will be affirmed, with costs.

HOOKER, C. J., MCGRATH and LONG, JJ., concurred. GRANT, J., did not sit.