AMERIQUEST MORTGAGE COMPANY v ALTON
ALTON v AMERIQUEST MORTGAGE COMPANY

Docket Nos. 264213, 264214. Submitted September 29, 2006, at Lansing.
      Decided November 28, 2006, at 9:05 a.m. Leave to appeal sought.

      Arkan Alton and Ameriquest Mortgage Company each brought an
      action against the other in the Oakland Circuit Court to quiet title
      to a parcel of real property formerly owned by Samir Yousif. Yousif
      had obtained a $225,000 mortgage from Franklin Funding, which
      was recorded in March 2002, and a second mortgage for $86,000
      from Alton, which was recorded in March 2003. In May 2003,
      Yousif obtained a third mortgage from Ameriquest for $294,300
      after signing an affidavit indicating that the Franklin mortgage
      was the only encumbrance on the property, despite the existence of
      the Alton mortgage. Yousif used a portion of the Ameriquest loan
      to pay off the Franklin loan, then defaulted on the Alton and
      Ameriquest loans. Alton foreclosed on his mortgage and acquired
      a sheriff's deed to the property. The trial court, Rudy J. Nichols, J.,
      ruled that Ameriquest was entitled to a first priority lien on the
      property under the doctrine of equitable subrogation, reasoning
      that extinguishing Ameriquest's claim would leave Alton, who
      knew that his lien was secondary to the Franklin mortgage, with
      a substantial windfall, while granting Ameriquest's claim would
      preserve Alton's title to the property subject to the amount
      Ameriquest paid to discharge the Franklin loan. Alton appealed by
      right the trial court's grant of summary disposition. The Court of
      Appeals reversed because it was required to follow the holding in
      *Washington Mut Bank, FA v ShoreBank Corp*, 267 Mich App 111
      (2005), which would compel the conclusion that Ameriquest was a
      "volunteer payor" and, therefore, was not entitled to equitable
      subrogation. Had it not been constrained to follow *Washington
      Mut Bank*, the Court would have adopted the position set forth in
      § 7.6 of the Restatement of Property (Mortgages), 3d, that the
      doctrine of equitable subrogation may be applied to a refinanced
      mortgage to prevent unjust enrichment, even in cases involving
      sophisticated lenders such as financial institutions. Following a
      poll of its judges, the Court of Appeals convened a special panel to
      resolve the conflict between this case and *Washington Mut Bank*

and vacated part III of its prior opinion, which conflicted with *Washington Mut Bank*. 271 Mich App 801 (2006).

After consideration by the special panel, the Court of Appeals *held*:

1. Michigan is a recording priority jurisdiction, and unambiguous statutory language provides that recordation of a mortgage determines lien priority and charges third parties with constructive notice. Mere volunteers who pay mortgages but have no interest in the land have consistently been precluded from invoking the doctrine of equitable subrogation to attain a higher priority position than that afforded by the order in which their mortgages were recorded. Accordingly, there is no basis for rejecting the rule in *Washington Mut Bank*.

2. No conditions or circumstances exist to warrant application of the equitable subrogation doctrine to allow Ameriquest to circumvent the statutory priority of Alton's mortgage and to assume the position of the prior recorded lien of Franklin Funding. Ameriquest was a volunteer with no preexisting interest in the property and, as such, was under no legal or equitable duty to Yousif to undertake the financing. Ameriquest had constructive notice of Alton's earlier recorded mortgage, and Ameriquest has not alleged any wrongdoing by Alton to support the intervention of equity.

Affirmed.

MURPHY, J., concurring, agreed that MCL 565.25 precluded application of the doctrine of equitable subrogation in this case, but concluded that, because equitable subrogation must be considered on a case-by-case basis, even a mere volunteer should be able to maintain a claim of equitable subrogation if the particular circumstances of any given case were compelling, provided there was evidence of unusual circumstances such as fraud or mistake. Furthermore, Ameriquest and similarly situated lenders cannot properly be deemed "mere volunteers," whom caselaw has indicated are those showing no interest in the land, lacking a relationship to the property, and lacking an agreement that the security shall be assigned. By paying off the mortgage, Ameriquest was protecting its interests and acting under the closing agreements and documents it had with the mortgagor.

BORRELLO, J., dissenting, would adopt this Court's previous opinion in this matter because it correctly concluded that Michigan caselaw and the Restatement of Property (Mortgages), 3d, support the application of equitable subrogation to permit a new mortgagee to take the priority position of a former mortgagee when proceeds from the new mortgage are used to pay off and

retire a former mortgage. Contrary to the holding in *Washington Mut Bank*, the relevant historical precedents can be reconciled under the principle that while equitable subrogation is not available to a payor who acts strictly as a volunteer with no interest to protect or duty to fulfill, a payor who acts to protect an interest or fulfill a duty, including to pay loan proceeds as directed, is entitled to equitable subrogation.

Mortgages — Equitable Subrogation — Volunteer Rule.

A party who pays a mortgage but has no interest in the land may not invoke the doctrine of equitable subrogation to attain a higher priority position than that afforded by the order in which the mortgage was recorded (MCL 565.25).

*Douglas A. Tull, P.C.* (by *Douglas A. Tull*), for Arkan Alton.

*Dykema Gossett PLLC* (by *Laura C. Baucus, Jill M. Wheaton,* and *Douglas J. Fryer*) for Ameriquest Mortgage Company.

Before: Fitzgerald, P.J., and Murphy, Talbot, Meter, Fort Hood, Schuette, and Borrello, JJ.

Talbot, J. Pursuant to MCR 7.215(J), this Court convened a special panel to resolve the purported conflict between this Court's ruling in the consolidated cases comprising *Ameriquest Mortgage Co v Alton,* 271 Mich App 660; 726 NW2d 424 (2006), vacated in part 271 Mich App 801 (2006), and *Washington Mut Bank, FA v ShoreBank Corp*, 267 Mich App 111; 703 NW2d 486 (2005). This matter is being decided without oral argument pursuant to MCR 7.214(E). We conclude that *Washington Mut Bank* was correctly decided and affirm the ruling in *Ameriquest*.

### I. *AMERIQUEST*—FACTUAL HISTORY AND HOLDING

The consolidated cases in *Ameriquest* arise from competing claims to quiet title to residential property.

Samir Yousif obtained a loan from Franklin Funding in exchange for a $255,000 mortgage on the subject property. This mortgage was recorded on March 11, 2002. Subsequently, Yousif obtained a separate loan from Arkan D. Alton in exchange for an $86,000 mortgage on the same property. Alton recorded his mortgage on March 21, 2003. Alton acknowledged he was aware of Franklin's preexisting mortgage on the property at the time of his loan to Yousif.

Shortly thereafter, falsely representing that no encumbrances other than the Franklin mortgage existed on the property, Yousif obtained a loan from Ameriquest in the amount of $294,300 secured by the property. The Ameriquest mortgage was recorded on May 1, 2003. The funds provided by Ameriquest were used to pay off the mortgage from Franklin Funding,[1] and a certificate of discharge of the Franklin mortgage was recorded on September 18, 2003. Although Ameriquest did perform a title search before providing the loan to Yousif and receiving a title commitment, the Alton mortgage was not discovered.

Yousif ultimately defaulted on both the Alton and Ameriquest mortgages. Alton foreclosed via advertisement. A sheriff's sale was conducted September 2, 2003, and Alton purchased the property for $92,863.42, recording the sheriff's deed on September 9, 2003. Appraisals of the subject property indicate valuations ranging from approximately $300,000 to $327,000. In June 2004, Alton and Ameriquest filed separate declaratory actions in the Oakland Circuit Court, which were later consolidated, to quiet title. Both Alton and

---

[1] The Franklin mortgage was, at some point, assigned to Popular Financial Services, being serviced by Equity One. The payoff amount remitted by Ameriquest to Equity One on March 24, 2003, totaled $241,337.51.

Ameriquest filed motions for summary disposition. Ameriquest, asserting the applicability of the doctrine of equitable subrogation, argued that it was entitled to assume the priority position of Franklin Funding because its monies had been used to pay off the first mortgage. Ameriquest further argued that should Alton prevail, he would receive a windfall by gaining possession of a property valued at $300,000 or more for his loan of $86,000, and that Ameriquest would lose all the funds loaned to pay off the first priority mortgage previously held by Franklin Funding. Alton asserted that Ameriquest had acted as a volunteer in paying off the Franklin mortgage and that Ameriquest's mortgage was eliminated by the foreclosure proceedings. On July 19, 2005, the circuit court entered an order granting summary disposition in favor of Ameriquest and denying Alton's motion, determining that Ameriquest would be prejudiced if its claim were extinguished, but that granting relief to Ameriquest would not extinguish the title that Alton had received through the sheriff's sale.

On appeal, this Court, stating that it was compelled to follow the ruling in *Washington Mut Bank*, reversed the decision of the trial court on the ground that Ameriquest's status as a volunteer precluded its entitlement to the benefit of equitable subrogation. Referencing *Washington Mut Bank,* this Court stated, in relevant part: "[T]he doctrine of equitable subrogation does not apply to permit a new mortgage, granted as part of a generic refinancing transaction, to take the priority of the original mortgage, which is being paid off, thereby giving the new mortgage priority over intervening liens." *Ameriquest, supra* at 665. This Court indicated that, were it not constrained by the prior holding of *Washington Mut Bank,* it would affirm the trial court's ruling and adopt the position of the Restatement of Property (Mortgages), 3d (the Restate-

ment), which would permit the application of the doctrine of equitable subrogation in "circumstances of a refinanced mortgage." *Ameriquest, supra* at 661-662. Noting that the Restatement did not adopt a strict volunteer rule, the Court indicated that the Restatement rule, which views subrogation as an equitable remedy to avoid " 'unearned windfall[s]' " and " 'unjust enrichment,' " comprised "the better view." *Id.* at 667-668, quoting Restatement Property (Mortgages), 3d, § 7.6, comment a, pp 508-509. The Court focused on the fact that Ameriquest, in paying off the Franklin mortgage, was following the instructions of Yousif and, thus, protecting its own security interest in the property. See *Ameriquest, supra* at 673. Reviewing the historical preclusion of subrogation in caselaw under the volunteer rule, the Court observed that the Restatement would permit the use of subrogation in the circumstances presented, opining:

> Because the holding of *Washington Mut Bank* establishes an inflexible rule precluding the application of equitable subrogation in mortgage refinancing, we find it contrary to the principles of equity the doctrine is intended to promote. Although *Washington Mut Bank* recognizes the possibility of equitable subrogation if the replacement loan is provided by the holder of the old mortgage, or if the new lender first purchased the prior mortgage and then accepted the new mortgage, *Washington Mut Bank* does not appear to permit an exception in this case despite the inequitable result. Existing Michigan law concerning equitable subrogation in the context of mortgage refinancing is confusing at best, and is contrary to logic, the Restatement of Property, and the view in many jurisdictions. These circumstances merit further consideration.

> Should the volunteer rule of *Washington Mut Bank* be found to be a proper interpretation of *Lentz*,[2] we urge the Michigan Supreme Court to review and reconsider this

---

[2] *Lentz v Stoflet,* 280 Mich 446; 273 NW 763 (1937).

precedent in light of the prevailing modern view reflected in the Restatement. . . . Where the equities are in favor of the payor mortgagee, we believe this rule should prevail. Given the common practice of mortgage refinancing and the sheer volume of transactions undertaken, equitable subrogation is a proper and necessary mechanism for resolving priority disputes to avoid injustice. [*Ameriquest, supra* at 683-684 (internal citation omitted).]

## II. *WASHINGTON MUT BANK*—FACTUAL HISTORY AND HOLDING

Hanna and Jaklin Shina received a $392,000 loan secured by a mortgage in favor of Option One Mortgage on property they owned in West Bloomfield, Michigan. The Shinas refinanced this property by securing a mortgage from Washington Mutual Bank in the amount of $392,000, which they used to satisfy and discharge the mortgage held by Option One. However, Washington Mutual Bank was unaware that two additional mortgages had previously been recorded against the subject property: one by ShoreBank, in the amount of $200,000, and one by Standard Federal Bank, in the amount of $249,000. *Washington Mut Bank, supra* at 112.

Following default by the Shinas, the property was placed in foreclosure. Washington Mutual Bank asserted its right to be equitably subrogated to the priority position of Option One because the proceeds of its loan had been used to satisfy and discharge the Option One mortgage. The trial court did not agree, and granted summary disposition in favor of ShoreBank and Standard Federal Bank because Washington Mutual Bank had no legal obligation to pay off the Option One mortgage and, as a volunteer, lacked entitlement to equitable subrogation. *Id.* at 112-113.

On appeal, this Court reviewed Michigan law and determined that two prior Supreme Court cases, *Lentz*

*v Stoflet*, 280 Mich 446; 273 NW 763 (1937), and *Walker
v Bates,* 244 Mich 582; 222 NW 209 (1928), were
irreconcilable. Although both *Walker* and *Lentz* involve
the applicability of the doctrine of equitable subroga-
tion and the status of a volunteer, their outcomes are
viewed as inconsistent. In *Walker*, the plaintiffs, one of
which was a real estate syndicate, were granted a lien
on the subject property. Commonwealth Federal Bank
had provided the homeowners a subsequent mortgage
that had been used to discharge the senior mortgage.
The *Walker* Court concurred that Commonwealth Fed-
eral Bank should be equitably subrogated to a priority
position over plaintiffs' lien on the basis of their dis-
charge of the senior mortgage. *Walker, supra* at 586-
587. In contrast, in *Lentz* the plaintiffs were denied
equitable subrogation on the basis of their volunteer
status and a determination that they maintained no
interest to protect. *Lentz, supra* at 451.

Citing its obligation to follow the most recent pro-
nouncement by the Michigan Supreme Court, the Court
in *Washington Mut Bank* determined that its decision
should be governed by *Lentz,* and stated:

> The most recent pronouncement of the Supreme Court
> on this topic would certainly seem to be that the doctrine of
> equitable subrogation does not allow a new mortgagee to
> take the priority of the older mortgagee merely because the
> proceeds of the new mortgage were used to pay off the
> indebtedness secured by the old mortgage. It is clear to us
> that, under *Lentz,* plaintiff is a mere volunteer and, there-
> fore, is not entitled to equitable subrogation. [*Washington
> Mut Bank, supra* at 119-120.]

Viewing *Walker* as an anomaly, the Court ruled in
relevant part:

> [W]e are unaware of any authority regarding the appli-
> cation of the doctrine of equitable subrogation to support

the general proposition that a new mortgage, granted as part of a generic refinancing transaction, can take the priority of the original mortgage, which is being paid off, giving it priority over intervening liens. . . . Such bolstering of priority may be applicable where the new mortgagee is the holder of the mortgage being paid off or where the proceeds of the new mortgage are necessary to preserve the property from foreclosure or another action that would cause the intervening lien holders to lose their security interests. [*Washington Mut Bank, supra* at 128.]

In light of the absence of such factual predicates in the circumstances presented, the Court determined that the plaintiff was not entitled to subrogation of the original mortgage and, thus, should not "receive priority over the intervening lienholders." *Id.*

### III. STATEMENT OF THE ISSUE AND STANDARD OF REVIEW

The conflict presented concerns whether the doctrine of equitable subrogation may be applied to grant the priority lien position of a prior lender to a mortgagee that loans money to finance a subsequent mortgage on real property, thereby giving the mortgagee a position superior to that held by an intervening junior mortgagee. This Court reviews equitable actions to quiet title de novo. *Burkhardt v Bailey,* 260 Mich App 636, 646; 680 NW2d 453 (2004). A trial court's determination pertaining to a motion for summary disposition is also reviewed de novo. *MacDonald v PKT, Inc,* 464 Mich 322, 332; 628 NW2d 33 (2001). Finally, this Court reviews the underlying issue of statutory construction de novo, *Eggleston v Bio-Medical Applications of Detroit, Inc,* 468 Mich 29, 32; 658 NW2d 139 (2003), because it involves the application of the law, i.e., the race/notice statutes, to undisputed facts regarding the recordation of mortgages.

### IV. ANALYSIS

Michigan is a recording priority jurisdiction.[3] A mortgage is clearly a conveyance within the meaning of the recording acts. MCL 565.35; *Stover v Bryant & Detwiler Improvement Corp of Detroit,* 329 Mich 482, 484; 45 NW2d 364 (1951). Accordingly, MCL 565.25 provides, in relevant part:

> (1) . . . In the entry book of mortgages the register shall enter all mortgages and other deeds intended as securities, and all assignments of any mortgages or securities.
>
> * * *
>
> (4) The instrument shall be considered as recorded at the time so noted and shall be notice to all persons except the recorded landowner subject to subsection (2), of the liens, rights, and interests acquired by or involved in the proceedings. All subsequent owners or encumbrances shall take subject to the perfected liens, rights, or interests.

In conformity with this statutory language, "[m]ortgages are subjected to the satisfaction of the obligation on the mortgage note in the order in which they are recorded." *Mitchell v Trustees of United States Mut Real Estate Investment Trust,* 144 Mich App 302, 314; 375 NW2d 424 (1985). The recordation of a mortgage constitutes constructive notice to all subsequent lienholders regarding both the existence of the mortgage and the amount of indebtedness that is secured. *McMurtry v Smith,* 320 Mich 304, 306-307; 30 NW2d 880 (1948).

If statutory language is unambiguous, appellate courts must presume that the Legislature intended the plainly expressed meaning, and any further judicial

---

[3] Michigan's status as a recording priority jurisdiction has existed since, at least, 1897 CL 8980.

construction is precluded. *DiBenedetto v West Shore Hosp,* 461 Mich 394, 402; 605 NW2d 300 (2000). The mandate expressed in MCL 565.25(4) is clear: recordation of a mortgage charges third parties with constructive notice and serves to determine lien priority. Accordingly, a properly recorded mortgage is notice to all subsequent purchasers that they take subject to any lien the mortgagor may have on the property whether the record has been examined or not. *Piech v Beaty,* 298 Mich 535, 538; 299 NW 705 (1941). There can be no dispute, given the statutory language, that Alton's mortgage, having been first recorded, has priority over Ameriquest's mortgage. The failure of Ameriquest's title-insurance commitment to discover Alton's duly recorded prior mortgage does not serve to nullify the constructive notice provided by the recordation or to alter the priority status of Alton's mortgage. See *Lewis v Hook,* 18 Mich App 405, 409; 171 NW2d 221 (1969).

Despite the mandate of MCL 565.25(4), Ameriquest contends that its mortgage is entitled to priority over Alton's under the doctrine of equitable subrogation. Ameriquest asserts that it is entitled to the rights of the prior mortgagee, Franklin Funding, because its loan was used to discharge this first mortgage. The Michigan Supreme Court has defined equitable subrogation as " 'a legal fiction through which a person who pays a debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the other.' " *Hartford Accident & Indemnity Co v Used Car Factory, Inc,* 461 Mich 210, 215; 600 NW2d 630 (1999), quoting *Commercial Union Ins Co v Med Protective Co,* 426 Mich 109, 117; 393 NW2d 479 (1986) (opinion of WILLIAMS, C.J.). In accordance with the tenets of this doctrine, a subrogee can acquire no greater rights than those possessed by the subrogor, and the subrogee may not be a "mere volunteer." *Hartford*

*Accident & Indemnity Co, supra* at 215; *Lentz, supra* at
449-450. In order to be entitled to subrogation, a
subrogee cannot voluntarily have made payment, but
rather must have done so in order to fulfill a legal or
equitable duty owed to the subrogor. *Beaty v Herzberg &
Golden, PC,* 456 Mich 247, 254-255, 258; 571 NW2d 716
(1997).

Equitable subrogation has been further described as
"a flexible, elastic doctrine of equity" requiring that
"[i]ts application should and must proceed on the
case-by-case analysis characteristic of equity jurispru-
dence." *Hartford Accident & Indemnity Co, supra* at
215. A proviso exists that equitable subrogation "will
not be enforced where it will work injustice to the rights
of those having equal equities." *Bd of Co Rd Comm'rs of
Calhoun Co v Southern Surety Co,* 216 Mich 528, 533;
185 NW 755 (1921) (quotation and citation omitted). It
is also well established that an equitable doctrine "can-
not be used to avoid the dictates of a statute, absent
fraud, accident, or mistake." *Burkhardt, supra* at 659.

Subrogation has been described as taking two dis-
tinct forms:

> The doctrine of subrogation rests upon the equitable
> principle that one who, in order to protect a security held
> by him, is compelled to pay a debt for which another is
> primarily liable, is entitled to be substituted in the place of
> and to be vested with the rights of the person to whom such
> payment is made, without agreement to that effect. This
> doctrine is sometimes spoken of as "legal subrogation," and
> has long been applied by courts of equity. *Stroh* v. *O'Hearn,*
> 176 Mich. 164, 177 [142 NW 865 (1913)]. There is also what
> is known as "conventional subrogation." It arises from an
> agreement between the debtor and a third person whereby
> the latter, in consideration that the security of the creditor
> and all his rights thereunder be vested in him, agrees to
> make payment of the debt in order to relieve the debtor
> from a sacrifice of his property due to an enforced sale

thereof. It is wholly independent of any interest in the property which the lender may have to protect. It does not, however, inure to a mere volunteer who has no equities which appeal to the conscience of the court. [*French v Grand Beach Co,* 239 Mich 575, 580-581; 215 NW 13 (1927).]

Historically, a "mere volunteer" has consistently been precluded from invoking the doctrine to attain a more favorable position of priority than that afforded by the order in which the instrument or mortgage was recorded. Very early on, the Michigan Supreme Court opined that payment of a debt by a third party, standing alone, "could hardly constitute an interest in the real estate; the right of a mere volunteer, showing no interest in the land, to pay off the mortgage, could hardly be deemed a valuable right." *Smith v Austin,* 9 Mich 465, 481 (1862). This standard was repeated in *Kelly v Kelly,* 54 Mich 30, 47; 19 NW 580 (1884), in which, because of the defendant's lack of a relationship to the subject property, the defendant was deemed a stranger to the title and, therefore, could not, by the payment of either the entirety or a portion of the mortgage, become subrogated to the rights of the mortgagee. This concept was again adopted in *Desot v Ross,* 95 Mich 81; 54 NW 694 (1893), when the Court stated:

It is only in cases where the person advancing money to pay the debt of a third party stands in the situation of a surety, or is compelled to pay it to protect his own rights, that a court of equity substitutes him in the place of the creditor as a matter of course, without any agreement to that effect. In other cases the demand of a creditor which is paid with the money of a third person, and without any agreement that the security shall be assigned to kept on foot for the benefit of such third person, is absolutely extinguished. [*Id.* at 83-84 (quotation and citation omitted).]

This longstanding precedent continued in *Lentz, supra* at 450, where the Court quoted, with approval, the following standard from *Stroh, supra* at 177: "Subrogation is an equitable doctrine depending upon no contract or privity, and proper to apply whenever persons other than mere volunteers pay a debt or demand which in equity and good conscience should have been satisfied by another." This distinction, that a "mere volunteer" is not entitled to equitable subrogation, has continued to be recognized and consistently applied through subsequent cases, including *Washington Mut Bank, supra* at 128, in which this Court, impliedly deferring to the statutory mandate regarding lien priority, stated:

> [W]e are unaware of any authority regarding the application of the doctrine of equitable subrogation to support the general proposition that a new mortgage, granted as part of a generic refinancing transaction, can take the priority of the original mortgage, which is being paid off, giving it priority over intervening liens. . . . Such bolstering of priority may be applicable where the new mortgagee is the holder of the mortgage being paid off or where the proceeds of the new mortgage are necessary to preserve the property from foreclosure or another action that would cause the intervening lien holders to lose their security interests.

Hence, in this case, consistent with both longstanding precedent and the strictures imposed by statute, there exist no conditions or circumstances to warrant application of the equitable subrogation doctrine to permit Ameriquest to circumvent the established priority of Alton's mortgage and to assume the position of the prior recorded lien of Franklin Funding. Ameriquest is a mere volunteer because it had no preexisting interest in the property and did not attempt to protect its interest in the property or to revive or obtain

an assignment of the original mortgage. See *Schanhite v Plymouth United Savings Bank*, 277 Mich 33; 268 NW 801 (1936). As such, Ameriquest was under no legal or equitable duty to Yousif to undertake the refinancing.

More importantly, "[i]t is only to prevent fraud and subserve justice that equity engrafts the wholesome provisions of subrogation or of equitable lien upon a transaction . . . ." *Kelly, supra* at 47. Although Ameriquest contends that the owner of the subject property, Yousif, falsely informed it that no liens existed other than that belonging to Franklin Funding at the time Ameriquest granted the mortgage, Ameriquest has not alleged any wrongdoing on the part of Alton to support the intervention of equity. Further, because Ameriquest is charged with constructive notice of Alton's earlier recorded mortgage, it is not entitled to equitable subrogation.

Finally, the *Ameriquest* Court suggested that the application of the doctrine of equitable subrogation advocated by the Restatement to preclude what the Restatement calls "an unearned windfall" constitutes the "better view." *Ameriquest, supra* at 667-668, citing Restatement Property (Mortgages), 3d, § 7.6, comment a. Acknowledging that "the rules of the Restatement are not necessarily coincident with the law of this state," the Court sought to reconcile "the extent to which the Restatement view is reflective of our state's jurisprudence." *Ameriquest, supra* at 668-669. Following a review of prior caselaw, the Court opined that, consistent with rulings in other jurisdictions and the adoption by the Restatement of a more encompassing definition of the term "volunteer," the equities favored Ameriquest's substitution in priority. *Id.* at 680. In addition, the Court opined that Ameriquest's lack of "actual notice" regarding the existence of Alton's mort-

gage supported the imposition of equity and served to
distinguish it from the result in *Washington Mut Bank,*
stating:

> We note only that the absence of actual notice of a
> mortgage recorded three days before the closing on the
> Ameriquest loan clearly distinguishes the equities herein
> from those in *Washington Mut Bank,* in which the refinanc-
> ing mortgagee neglected to discover the intervening re-
> corded mortgages. In this regard, the result in *Washington
> Mut Bank* is more properly reached on a consideration of
> the equities, and particularly the issue of notice, rather
> than on the basis of a rule that equitable subrogation is
> inapplicable. [*Ameriquest, supra* at 682.]

The Court concluded that the ruling in *Washington Mut
Bank* should be rejected because it "establishes an inflex-
ible rule precluding the application of equitable subroga-
tion in mortgage refinancing" that is "contrary to the
principles of equity the doctrine is intended to promote."
*Ameriquest, supra* at 683. As such, *Ameriquest* urged the
rejection of the purported establishment of a bright-line
rule by *Washington Mut Bank* regarding the applicability
of equitable subrogation.

The difficulty with this argument is that *Washington
Mut Bank* did not establish an intractable rule regard-
ing equitable subrogation, but rather encompassed both
the recognition of the controlling statutory mandate
contained in MCL 565.25(4) and the acknowledged
constraints on the use of equitable powers by courts.
"Although courts undoubtedly possess equitable power,
such power has traditionally been reserved for 'unusual
circumstances' such as fraud or mutual mistake. A
court's equitable power is not an unrestricted license
for the court to engage in wholesale policymaking . . . ."
*Devillers v Auto Club Ins Ass'n,* 473 Mich 562, 590; 702
NW2d 539 (2005). Because MCL 565.25(4) plainly pro-
vides for priority designation based on date of recorda-

tion, and Ameriquest has not alleged fraud, mutual mistake, or any other "unusual circumstance" in reference to Alton, there is no basis for this Court to invoke its equitable powers.

Affirmed.

FITZGERALD, P.J., METER, FORT HOOD, and SCHUETTE, JJ., concurred with TALBOT, J.

MURPHY, J. (*concurring*). I respectfully concur with the majority in affirming the ruling in *Ameriquest Mortgage Co v Alton*, 271 Mich App 660; 726 NW2d 424 (2006), vacated in part 271 Mich App 801 (2006). I write separately because, while I agree with the majority that MCL 565.25 precludes application of the doctrine of equitable subrogation in this case, I disagree with the majority's analysis concerning equitable subrogation outside the context of MCL 565.25, and particularly its discussion of the volunteer rule.

I first note that the holding issued by the majority under MCL 565.25 effectively abolishes the doctrine of equitable subrogation in its known form relative to mortgage priority and foreclosure disputes. My reading of the majority opinion leads me to the following summation of the holding: A party may seek equitable subrogation in mortgage priority and foreclosure disputes only if there are allegations of fraud, mutual mistake, or any other "unusual circumstances," in light of MCL 565.25. Presuming that such allegations are made, resort to equitable subrogation remains unavailable if the party seeking subrogation is deemed a mere volunteer. According to the majority, the attempt by Ameriquest Mortgage Company to invoke equitable subrogation fails because there has been no allegation of fraud, mutual mistake, or any other unusual circum-

stances relative to Arkan D. Alton, and because Ameriquest and similarly situated lenders are mere volunteers.

I agree with the majority's analysis under MCL 565.25. " 'Equitable subrogation is a legal fiction through which a person who pays a debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the other.' " *Hartford Accident & Indemnity Co v Used Car Factory, Inc*, 461 Mich 210, 215; 600 NW2d 630 (1999) (citation omitted); see also *Smith v Sprague*, 244 Mich 577, 579-580; 222 NW 207 (1928) (doctrine applicable where equity demands that a party furnishing money to pay a debt should be substituted for the creditor or in the place of the creditor). Here, application of the doctrine of equitable subrogation would place Ameriquest ahead of Alton in priority and in the position of Equity One, which had been assigned the earlier recorded mortgage held by Franklin Funding, despite the fact that Alton had recorded his mortgage before Ameriquest recorded its mortgage. However, this would be contrary to MCL 565.25.

MCL 565.25 addresses the recordation of deeds, mortgages, levies, and other property-related documents, along with addressing their priorities. MCL 565.25(1) provides, in part, that "the register shall enter all mortgages and other deeds intended as securities" in the entry book of mortgages. MCL 565.25(4) provides:

> The instrument shall be considered as recorded at the time so noted and shall be notice to all persons except the recorded landowner subject to subsection (2), of the liens, rights, and interests acquired by or involved in the proceedings. *All subsequent owners or encumbrances shall take subject to the perfected liens, rights, or interests.* [Emphasis added.]

The language of the statute would dictate that Ameriquest's encumbrance is inferior to Alton's encumbrance with respect to priority. Our Supreme Court made it clear in *Devillers v Auto Club Ins Ass'n*, 473 Mich 562, 590; 702 NW2d 539 (2005), that it is unacceptable for courts to apply equity, absent unusual circumstances such as fraud or mutual mistake, in contravention of a statutory provision that contains clear and unambiguous language. "A court's equitable power is not an unrestricted license for the court to engage in wholesale policymaking . . . ." *Id.* It would appear that equitable subrogation does just what *Devillers* proclaims cannot be done by placing the holder of a subsequently recorded mortgage in a position that is superior to the holder of an earlier recorded mortgage for reasons of equity in contravention of the statutory decree. Again, I agree with the majority's assessment of this issue.

Assuming that the facts of a given case preclude application of MCL 565.25 as a bar to a claim of equitable subrogation, i.e., there is evidence of fraud, mutual mistake, or other "unusual circumstances," I would not agree with the majority's stance that Ameriquest and similarly situated lenders are mere volunteers and thus cannot utilize the doctrine.

The caselaw provides that equitable subrogation is a flexible, elastic doctrine of equity that should and must proceed on the case-by-case basis that is characteristic of equity jurisprudence. *Hartford Accident, supra* at 215; *Atlanta Int'l Ins Co v Bell*, 438 Mich 512, 516 n 1, 521; 475 NW2d 294 (1991) (opinion of BRICKLEY, J); *Eller v Metro Industrial Contracting, Inc*, 261 Mich App 569, 573; 683 NW2d 242 (2004). Even the volunteer rule, stated in full, provides that equitable subrogation does not " 'inure to a mere volunteer *who has no equities which appeal to the conscience of the court.*' " *Lentz v Stoflet*, 280 Mich 446, 450; 273 NW 763 (1937),

and *Walker v Bates*, 244 Mich 582, 587; 222 NW 209 (1928), quoting *French v Grand Beach Co*, 239 Mich 575, 580-581; 215 NW 13 (1927) (emphasis added). The italicized language suggests that, ultimately, the facts of any given case control. In *Stroh v O'Hearn*, 176 Mich 164, 177; 142 NW 865 (1913), the Supreme Court stated that application of equitable subrogation "is proper in all cases . . . where injustice would follow its denial . . . ." Of course, this analysis is now somewhat limited by our interpretation of MCL 565.25, and no longer can one rely on simple equitable considerations alone to invoke the doctrine of equitable subrogation; rather, there must be a showing of fraud, mutual mistake, or some other "unusual circumstances." In the context of recorded documents under MCL 565.25, we have almost entirely closed the door of equity by restricting the doctrine's application to unusual circumstances such as fraud or mutual mistake, which certainly constitute theories predicated on principles of equity. Nonetheless, because equitable subrogation is to be considered on a case-by-case basis and because equity still plays a role, albeit limited, I conclude that even a mere volunteer should be able to maintain a claim of equitable subrogation if the particular circumstances of any given case are compelling, as long as there is evidence of unusual circumstances such as fraud or mutual mistake. Indeed, evidence of fraud or mutual mistake in and of itself would seem to beg application of equitable subrogation.

Moreover, Ameriquest and similarly situated lenders cannot be properly deemed "mere volunteers." Ameriquest did not gratuitously pay off the Equity One loan and mortgage; rather, it was protecting its interests by doing so and acting under the closing agreements and documents it had with the mortgagor. In *Lentz, supra* at

451, the Court, rejecting the application of equitable subrogation, ruled: "[W]hen plaintiffs loaned the money they had no interests to protect. It was done without any agreement or understanding that they were to enjoy the fruits of subrogation."

In the cases cited by the majority, there are references to mere volunteers as being those "showing no interest in the land," *Smith v Austin*, 9 Mich 465, 481 (1862), those lacking a relationship to the property, *Kelly v Kelly*, 54 Mich 30, 47; 19 NW 580 (1884), and those "without any agreement that the security shall be assigned," *Desot v Ross*, 95 Mich 81, 84; 54 NW 694 (1893) (quotation and citation omitted).

Certainly, Ameriquest showed an interest in the land, had a relationship to the property, and obtained an agreement giving it security in the property. Ameriquest was protecting its interests when it obtained a mortgage to secure its loan and when it paid off the Franklin/Equity One mortgage and obtained a discharge. It has also been stated that equitable subrogation arises in favor of one who pays the debts of another under a legal, equitable, or moral duty. *Beaty v Hertzberg & Golden, PC*, 456 Mich 247, 255; 571 NW2d 716 (1997); *Machined Parts Corp v Schneider*, 289 Mich 567, 575-576; 286 NW 831 (1939). Pursuant to the closing documents between Ameriquest and the mortgagor, there arose a contractual legal obligation to disburse the loan proceeds, in part, to Equity One.

In sum, I agree with the majority that MCL 565.25 precludes application of the doctrine of equitable subrogation in this case, but I disagree with the majority's analysis concerning equitable subrogation outside the context of MCL 565.25, and particularly its discussion of the volunteer rule.

I respectfully concur.

BORRELLO, J. (*dissenting*). I respectfully dissent from the majority opinion and would adopt verbatim this Court's opinion in *Ameriquest Mortgage Co v Alton*, 271 Mich App 660; 726 NW2d 424 (2006), because this Court in *Ameriquest* correctly concluded that, contrary to the holding in *Washington Mut Bank, FA v Shore-Bank Corp*, 267 Mich App 111; 703 NW2d 486 (2005), Michigan caselaw and Restatement Property (Mortgages), 3d, § 7.6, p 508, support the application of equitable subrogation to permit a new mortgagee to take the priority position of a former mortgagee when proceeds from the new mortgage are used to pay off and retire a former mortgage.

The holding in *Washington Mut Bank* is premised on the assertion that the decisions in *Walker v Bates*, 244 Mich 582; 222 NW 209 (1928), and *Lentz v Stoflet*, 280 Mich 446; 273 NW 763 (1937), cannot be reconciled. I disagree.

In *Walker*, the defendants purchased a home, mortgaged the property with Commonwealth Federal Bank, and used the proceeds of the loan to pay off and retire a previous mortgage. Thus, the *Walker* Court found that Commonwealth Federal Bank was entitled to be subrogated to the position of the prior mortgagee because it was clear that Commonwealth Federal Bank paid the prior mortgage at the direction of the defendants, thereby acting to fulfill a duty to them.

In *Lentz*, the plaintiffs loaned money to the defendants in return for a mortgage on certain property, which the defendants then used to pay off an existing mortgage. When the defendants defaulted on the loan, the Court in *Lentz* determined that the plaintiffs were not entitled to be subrogated to the position of the prior mortgage because they had no interests to protect when they advanced the funds.

The principle that emerges from a reading of these two cases is that equitable subrogation is not available to a payor who acts strictly as a volunteer, with no interest to protect or duty to fulfill; but if the payor acts to protect an interest or fulfill a duty, including to pay loan proceeds as directed, the payor is entitled to subrogation. Thus, because I would hold that this Court in *Washington Mut Bank* created a far too restrictive reading of Michigan law on the basis of the erroneous conclusion that *Walker* and *Lentz* are irreconcilable, I would adopt the reasoning of this Court in *Ameriquest*.