NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0332n.06

**Nos. 09-2513 / 10-1037**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

MORTGAGE ELECTRONIC )
REGISTRATION SYSTEMS, INC., as )
nominee for InterBay Funding, LLC, )
)
    Plaintiff-Appellant, ) ON APPEAL FROM THE UNITED
) STATES DISTRICT COURT FOR THE
v. ) WESTERN DISTRICT OF MICHIGAN
)
TAMMY CHURCH; CHARLES O. )
DAVIS, )
)
    Defendants, )
)
and )
)
UNITED STATES OF AMERICA, )
)
    Defendant-Appellee.

```
┌─────────────────────────┐
│          FILED          │
│      May 18, 2011       │
│   LEONARD GREEN, Clerk  │
└─────────────────────────┘
```

Before: BATCHELDER, Chief Judge; ROGERS and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. It sometimes pays to check a map. The mortgage lender in this case did not, and as a result it recorded an interest in Tammy Church's property in the wrong county. Luckily for the public fisc, the IRS, which also placed a lien on Church's property, did not make the same mistake. When the lender realized what had happened, it sued, seeking in equity what it could not get in law—a declaration that it had the superior claim to the property. Equity does not save the lender in this instance, and we therefore affirm.

I.

In March 2004, Tammy Church borrowed $330,000 from Argent Mortgage Company, which secured the loan with a mortgage on her property in Rapid City, Michigan. On August 2, 2006, Church took out another mortgage on the same property, this time with Mortgage Electronic Registration Systems (MERS), for $402,500. Church used the proceeds from the MERS loan to pay off the Argent loan as well as to satisfy a judgment lien and pay some delinquent taxes.

On August 10, 2006, MERS recorded its interest in Church's property with the Kalkaska County Register of Deeds. That was the wrong place to record the mortgage. The property lies in Antrim County. Meanwhile, Church's federal tax delinquencies prompted the IRS to record five tax liens (totaling $465,373.18) on her property on August 28, 2006, and in April and May 2007. The IRS recorded the liens with the Antrim County Register of Deeds. That was the right place to record them.

In October 2007, MERS realized its mistake and recorded the mortgage in Antrim County. In doing so, MERS discovered that the IRS claimed an interest, now a first-in-time interest, in the property.

MERS filed this lawsuit in the Antrim County Circuit Court seeking a declaration that its claims were superior to those of the United States (and to those of Church and another defendant, neither of which is relevant to this appeal). MERS argued (1) that it had a priority interest in the property even though it recorded the interest later in time, or (2) that the doctrine of "equitable

subrogation" in the alternative permitted it to jump ahead of the IRS in the priorities chain. The United States removed the case to federal court. *See* 28 U.S.C. § 1444.

The district court rejected both arguments as a matter of law, granting summary judgment to the United States. On appeal, MERS raises only a claim of equitable subrogation.

## II.

When it comes to federal tax liens, the relative priority of competing liens is a matter of federal law. *See United States v. Craft*, 535 U.S. 274, 278 (2002); *Hensley v. Harbin*, 196 F.3d 613, 615 (6th Cir. 1999). "[P]riority . . . is governed by the [federal] common-law principle that 'the first in time is the first in right.'" *United States ex rel. IRS v. McDermott*, 507 U.S. 447, 449 (1993) (quoting *United States v. City of New Britain*, 374 U.S. 81, 85 (1954)). Here, the IRS lien has priority over the MERS lien because the government properly recorded its interest first, a conclusion MERS no longer disputes.

Determining the order of priorities, however, does not settle this dispute. The federal rule has an exception that allows a junior creditor to step into the shoes of a senior one. "Where, under local law, one person is subrogated to the rights of another with respect to a lien or interest, such person shall be subrogated to such rights for purposes of any [tax] lien . . . ." 26 U.S.C. § 6323(i)(2). Subrogation rights turn on state law, here Michigan law, and in this instance MERS claims that the Michigan doctrine of "equitable subrogation" permits the company to substitute itself for the earlier-in-time priorities of Argent Mortgage Company, Church's first lender.

Equitable subrogation is "a legal fiction through which a person who pays a debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the other." *Hartford Accident & Indem. Co. v. Used Car Factory, Inc.*, 600 N.W.2d 630, 632 (Mich. 1999). Under Michigan law, the doctrine does not apply to "volunteer[s]," those who merely loan money with "no interests to protect" and do so "solely for the purpose of self aggrandizement." *Lentz v. Stoflet*, 273 N.W. 763, 765 (Mich. 1937).

In *Ameriquest Mortgage Co. v. Alton*, 731 N.W.2d 99, 107 (Mich. Ct. App. 2006), a homeowner used the proceeds from a second mortgage to pay off a previous one. The court held that the second lender, who "had no preexisting interest in the property and did not attempt to protect its interest in the property or to revive or obtain an assignment of the original mortgage," could not invoke equitable subrogation. *Id.* In the absence of any "legal or equitable duty" to the property owner, the court explained, the lender was a "mere volunteer." *Id.*; *see also Wash. Mut. Bank, F.A. v. ShoreBank Corp.*, 703 N.W.2d 486, 491 (Mich. Ct. App. 2005) (same).

*Lentz*, *Ameriquest* and *Washington Mutual* govern this case. MERS "had no preexisting interest" in the Church property and no "legal or equitable duty" to Church that "compelled [it] to pay a debt for which another is primarily liable." *Ameriquest*, 731 N.W.2d at 106. It was only a "volunteer," one that lent money to Church through a "generic refinancing transaction," *Wash. Mut.*, 703 N.W.2d at 496, "solely for the purpose of" making money (*i.e.*, solely for "self aggrandizement"), *Lentz*, 273 N.W. at 765, without any requirement that Church pay off her existing debt. That Church decided to use the "proceeds of [MERS's] mortgage . . . to pay off the

- 4 -

indebtedness secured by the old mortgage" does not permit MERS to subrogate its interests to the earlier lender. *Wash. Mut.*, 703 N.W.2d at 491. MERS had the "liberty to elect whether [it] would or would not be bound" by an agreement with Church, which removes it from eligibility for equitable subrogation. *Id.*

MERS maintains that two Michigan Supreme Court cases point in the opposite direction. In *Smith v. Sprague*, the property owner "pleaded" with his former daughter-in-law to help him satisfy an existing mortgage in return for a promise to grant her a mortgage on the property. The owner died without keeping his promise. 222 N.W. 207, 207–08 (Mich. 1928). The Court invoked equitable subrogation, giving the woman rights to the property despite the lack of a preexisting interest. *See id.* at 208. Yet that case is at least two steps removed from this one. *Sprague* had nothing to do with a "priority over intervening encumbrances. Rather, the Court used the subrogation doctrine to impose liability on the [property owner's] widow." *Wash. Mut.*, 703 N.W.2d at 494. And *Sprague* involved a promise from an owner to a relative, a fact pattern that implicates the kind of "equitable duty" from which equitable subrogation takes its name and that has nothing to do with the Church-MERS relationship and the arm's-length transaction they consummated.

The other case, *Walker v. Bates*, we acknowledge, appears to define the doctrine differently, as it held that a bank could subrogate when the borrower used the loan proceeds to pay off an earlier mortgage, even though the bank had no preexisting interest in the property. 222 N.W. 209, 210 (Mich. 1928). But *Walker* no longer is good law. Nine years after *Walker*, the Michigan Supreme Court addressed a similar fact pattern and refused to apply subrogation in the absence of any

"interests to protect." *Lentz*, 273 N.W. at 765; *Wash. Mut.*, 703 N.W.2d at 490 ("*Lentz* . . . reached the opposite result as *Walker*, despite a similarity in facts.").

One of the Justices in *Lentz* observed that "[t]he effect of [this] opinion . . . is to overrule *Walker*." 273 N.W. at 765 (Potter, J., concurring). And the Michigan Court of Appeals has seen it the same way ever since. That court has consistently treated *Lentz* as overruling *Walker*. *See Ameriquest*, 731 N.W.2d at 101–104; *Wash. Mut.*, 703 N.W.2d at 496 ("*Walker* is not a precedent to be followed, but an accident to be avoided."). MERS offers no reason to think the Michigan Supreme Court would follow *Walker* today.

The "unique, and unusual facts" of this case, MERS Br. at 23, do not help MERS either. It is not clear why this mistake was "unique" or why it should be excused. If the law routinely protected lien holders who filed in the wrong county, that would go a long way to defeating the benefit of having a centralized lien-recording system in the first place.

The cases also do not endorse this kind of leniency. *Ameriquest* refused to excuse the mortgage lender's failure to discover intervening encumbrances on the property, even though the homeowner had defrauded the lender. *See* 731 N.W.2d at 101, 108. After *Ameriquest*, it is hard to understand why Michigan would excuse a less sympathetic lender, one who was not defrauded but who simply recorded its lien in the wrong county.

Everyone makes mistakes, to be sure. But it is difficult to find a basis in Michigan law for overlooking this one. MERS is not just a sophisticated party; its sophistication relates to this precise

area of business and law—lending money and securing the loans with an interest in the borrowers' property. *See Deutsche Bank Trust Co. Ams. v. Spot Realty, Inc.*, 714 N.W.2d 409, 414 (Mich. Ct. App. 2005) ("[T]he doctrine of equitable subrogation was never intended for the protection of sophisticated financial institutions that can cho[o]se the terms of their credit agreements."). Nor was it a state secret that Church's property was in Antrim County. MERS attached to its own pleadings a settlement statement completed the day the mortgage was executed (reflecting the MERS loan and Church's payment of her debts) and a sheriff's deed foreclosing Church's property, both dated before MERS recorded its interest in the wrong county and both identifying Church's property as part of Antrim County. "A court's equitable power is not an unrestricted license for the court" to do what it wishes with the fact patterns that come before it. *Devillers v. Auto Club Ins. Ass'n*, 702 N.W.2d 539, 556 (Mich. 2005). There must be a legitimate explanation for invoking that power. There is none here.

III.

For these reasons, we affirm.