HAMILTON NAT. BANK OF CHATTANOOGA v. DUNCAN et al.
—132 S. W. (2d) 353.

Eastern Section. May 8, 1939.

Petition for Certiorari denied by Supreme Court, October 14, 1939.

H. B. Mack, of Chattanooga, for appellants.
Cantrell, Meacham & Moon, of Chattanooga, for appellee.

PORTRUM, J. The facts in this case were harder to grasp than any other case the court can recall. The purpose of the suit is to

cancel an erroneous release of a $2,500 note secured by a trust deed and for a decree permitting the foreclosure of the trust deed. There are numerous conveyances and two foreclosures, the last of which it is alleged was without legal effect and was the cause of the erroneous release of a note secured by a valid trust deed which had priority over all other outstanding trust deeds. The facts can best be presented by first identifying the parties concerned. The Hamilton National Bank is the party complainant, and of interest, and during these transactions which were initiated in January, 1927, it maintained a branch office or bank in the City of Chattanooga, and also a trust department known as the Hamilton Trust & Savings Bank, a corporation. Since that time the Trust & Savings Bank has been consolidated and we can identify the Hamilton National Bank as representing the three institutions. The bank used F. L. Underwood as Trustee in the transfers in which it was primarily interested, and the parties owning the equities in the property involved in the order they acquired their interest are: W. F. Ashburn, Jr., W. H. Crosby, and L. V. Duncan, the two last named being brothers-in-law. The Mountain City Investment Company, a subsidiary of the Hamilton National Bank, is now in possession of the property under a Trustee's deed which grew out of the foreclosure last above referred to.

On January 28, 1927, the bank owned lots No. 34 and 36 in Block 3 of Mission Ridge Land Company's Addition, and on this day it sold by warranty deed this property to W. F. Ashburn, Jr., for a recited consideration of $3,500, $1,000 being paid in cash and a note for the sum of $2,500 due in one year taken for the remainder, which note was secured by a deed of trust in which Frank L. Underwood was named as Trustee.

On January 29, 1927, which was the next day, Ashburn gave a second deed of trust to secure W. H. Crosby in the sum of $1,280, but this debt having been released, it is no longer material.

On September 1, 1927, Ashburn executed a deed of trust to secure W. H. Crosby in the sum of $2,400 borrowed money. On December 12, 1927, W. F. Ashburn, Jr., executed to W. H. Crosby, Trustee, a warranty deed for the consideration of $1 and other valuable considerations, and one note in the sum of $2,500, being the note held by the bank and secured by the deed of trust of January 28, 1927. This deed was not placed of record.

On October 4, 1928, W. H. Crosby, Trustee, executed a deed of trust on this property to secure L. V. Duncan in the sum of $2,500 payable eighteen months from date, reciting in said deed the prior lien owned by the bank.

On July 9, 1929, F. L. Underwood, Trustee, foreclosed on the deed of trust executed January 28, 1927, when the bank became the purchaser of the property at the Trustee's sale and a foreclosure deed

was made and registered in the name of the Bank. This foreclosure wiped out all the above recited transfers, leaving the title to the property in the bank free of all liens.

On August 19, 1929, the bank transferred the property to L. V. Duncan, Trustee, for himself and others, by warranty deed, the consideration being $1 cash and the balance represented by a note of $2,500 payable three years after date, secured by a vendor's lien, and also by a deed of trust of even date, executed by L. V. Duncan, Trustee, to F. L. Underwood, Trustee.

On August 20, 1929, the following day, L. V. Duncan, Trustee, executed a trust deed to secure W. H. Crosby in the sum of $1,850 evidenced by one note due eighteen months from date. On December 7, 1929, the bank having called upon the Trustee, F. L. Underwood, to foreclose the dead trust deed through mistake foreclosed the deed of trust executed on October 4, 1928 (which deed of trust had been wiped out by the foreclosure of July 9, 1929, above referred to), and the property was sold to the Mountain City Investment Company for the consideration of $1,000. After this foreclosure the bank released the $2,500 note secured by the deed of trust of August 19, 1929.

The Mountain City Investment Company went into possession of the property in 1930 and has held possession ever since. The purchaser attempted to make a sale of the property and when the title was abstracted the mistake was discovered, and it was found that the deed of trust of August 19, 1929, which carried the legal title to the estate, had not been foreclosed and the title was outstanding in the Trustee F. L. Underwood, and further that the note secured by this trust deed of $2,500 had been released of record; therefore the equitable title was outstanding in L. V. Duncan, Trustee, the mortgagor. This bill was filed to cancel this erroneous release and to foreclose this mortgage, for the purpose of clearing up the title in the Mountain City Investment Company.

It appears that no rights of innocent third parties have intervened, and that the defendant L. V. Duncan cannot justly complain to the relief prayed. It is clear that there was a mistake made; the Trustee foreclosed a trust deed that was dead, and no legal rights passed under the foreclosure to the purchaser, other than the right to rely upon the deed when registered as a color of title. The note released was not the one secured by this trust deed, and the release as between the parties did not satisfy the notes nor act as a payment of the obligation. It is clear that the complainant is entitled to a cancellation of this release and to a foreclosure of the deed of trust, the said note which is secured by the deed of trust being outstanding and unpaid. The only controversy arising is to the equity of the defendant, who had been out of possession of the property since 1931, and the Mountain City Investment Company has enjoyed the

rents and profits since such time. It is insisted that the defendant is entitled to an accounting of the rents and profits which should be credited upon the note before the foreclosure. This is resisted by the complainant and it is further insisted by the complainant that it is entitled to a judgment for the face of the note with interest from the date of its execution until the date of the foreclosure, a period of some nine years. Pending this litigation, the defendant was discharged as a bankrupt, and this debt having been listed, then the complainant is not entitled to a personal judgment against the defendant for the note or interest, but only to a recital of the amount due upon the obligation, which must be satisfied, if at all, from a foreclosure of the property securing the note. The decree followed this course and gave no personal judgment against the defendant. The defendant has no equity in the property and has had none since the filing of his petition in bankruptcy, and he is not in a position to call upon the Mountain City Investment Company for an accounting for the rent. His equity in this property, he having owned other property in which he claimed a homestead, belonged to his creditors on the filing of his petition in bankruptcy, and it appearing that the Hamilton National Bank was his greatest creditor, it in equity is entitled or has a superior claim to the defendant to the rents of this property. The defendant's liability was $18,000 of which approximately $10,000 was owed directly to the bank, and $2,500 was owed indirectly to the bank. It would not be equitable to require the bank to account for the rents and profits, which would amount to an unjust enrichment of the defendant at the expense of his creditor, the bank.

We find no error in the judgment of the lower court and the decree is affirmed. The cost of the appeal should be divided; the bank should be charged with the consequences of its error.

Ailor and McAmis, JJ., concur.