**W. & O. CONSTRUCTION COMPANY, INC., Plaintiff-Appellant,**

v.

**IVS CORPORATION, Defendant,**

**Commercial Technology, Inc., Intervenor-Appellee.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Sept. 28, 1984.

Rehearing Denied Nov. 2, 1984.

Application for Permission to Appeal Denied by Supreme Court March 25, 1985.

W. Keith Keisling, Livingston, for plaintiff-appellant.

Bobby James Ellis, Gainesboro, for intervenor-appellee.

## ABRIDGED OPINION

TODD, Presiding Judge, Middle Section.
(The original opinion has been abridged for publication.)

Plaintiff, W. & O. Construction Company, Inc., sued defendant IVS Corporation, a foreign corporation, seeking to enforce an unsecured debt by non resident attachment of real estate of defendant within this State. Commercial Technology, Inc., intervened, asserting that it had bought the property from IVS before this suit was filed. The Chancellor upheld the claim of the intervenor, and dissolved the attachment. Plaintiff appealed.

Five issues are presented on appeal, all of which relate to the central issue which is:

If a bona fide purchaser for value acquires real property by deed executed prior to the filing of a suit to attach said property but said deed is not recorded until after the filing of said suit and the recording of a notice of lis pendens, but said deed is recorded prior to the levy of attachment upon the property, which has

prior rights in the property, the plaintiff in the attachment suit or the grantee named in the deed?

The appellee-intervenor insists that, at the time the notice of lis pendens was filed on February 10, 1983, appellee had already purchased the property in good faith and that its rights as purchaser were not destroyed by the recording of the lis pendens notice prior to the recording of appellee's deed. Appellee relies upon *Sharp v. Hunter*, 47 Tenn. (7 Cold.) 389 (1870).

The cited case was a suit filed in Chancery Court on March 17, 1866, to collect a $779.00 debt from a non resident who had died leaving property in this State. An attachment was prayed for but not issued. Prior to his death and prior to the suit, on December 31, 1861, the deceased had sold the property to one Lowry, but the deed was not filed for registration until March 14, 1866. The proof of execution was found to be faulty, the fault was remedied and the deed was re-registered on May 2, 1866, after the filing of the attachment suit but before the levy of the attachment. The Supreme Court held the rights of the purchaser to be superior to the rights of the creditor and said:

This attachment proceeding is brought under section 3455, sub-section 7, of the Code, which provides that "Any person having a debt or demand due at the commencement of an action, * * * may sue out an attachment at law or in equity against the property of a debtor or defendant. * * * Where any person liable for any debt or demand residing out of the State, dies, leaving property in the State."

. . . .

The complainant claims that the deed made by Hunter to Lowry in 1861, not having been legally registered when the bill was filed, on the 17th of March, 1866, a lien was fixed upon the land at that time by the filing of the bill; that the deed was void as against the lien of the bill; and that no writ of attachment was necessary in order to render the attachment effectual.

By section 3507 it is declared that "any sale, transfer, or assignment, made after the filing of an attachment bill [394] in Chancery, or after the suing out of an attachment at law, of property mentioned in the bill or attachment, as against the plaintiff, shall be inoperative and void."

The property sought to be attached is described in the bill in this cause; and there is no doubt that in such cases, if the writ is issued and levied with due diligence, any transfer made after the filing of the bill, and previous to the issuance or actual levy of the attachment, would be void: 3 Head, 392; 2 Cold., 498; 6 Cold., 348. But in this case the writ of attachment was not actually issued and levied until a year after the filing of the bill.

. . . .

In the case of bills filed by judgment creditors to subject equitable assets, under sections 4283–6 of the Code, the statute expressly gives a lien from the filing of the bill; and it is to be presumed that the *Legislature would have made similar provision in the present class of cases, if it had intended that the lien should exist.* (Emphasis supplied.) 47 Tenn. at 393, 396.

The concluding expression of the foregoing quotation distinguishes *Sharp v. Hunter* from the present case. That is, at the time of *Sharp v. Hunter*, the Legislature had not "made similar provision in the present class of cases"; but, at the present time, the Legislature has "made similar provision in the present class of cases" evidencing its intent that the lien should exist where notice of lis pendens has been duly registered.

T.C.A. § 29–6–101 (formerly 1858 Code § 3455) provides for attachment of property of foreign corporations.

§ 29–6–111 (1858 Code § 3461) allows attachment suits in Chancery without first obtaining a judgment at law.

§ 29–6–135 is derived from 1858 Code § 3507, but the contents of § 3507 were

changed in 1932. The wording of the 1838 statute was:

3507—Transfer after attachment.—Any transfer, sale, or assignment, made after the filing of an attachment bill in chancery, or after the suing out of an attachment at law, of property mentioned in the attachment, as against the plaintiff, shall be inoperative and voidable.

In 1932, the words, "as elsewhere provided", were added to the 1838 section in forming § 9458 of the 1932 Code which is worded the same in the present T.C.A. § 29–6–135.

Also, in the 1932 Code, there appeared for the first time, § 8053, which is the present T.C.A. § 20–3–101, as follows:

Filing of abstract—Effect of not filing.—(a) When any person, in any court of record, by declaration, petition, bill or cross bill, shall seek to fix a lien lis pendens on real estate, or any interest therein, situated in the county of suit, in furtherance of the setting aside of a fraudulent conveyance, of subjection of property under return of nulla bona, tracing a trust fund, enforcing an equitable vendor's lien, *or otherwise*, he shall file for record in the register's office of the county an abstract, certified by the clerk, containing the names of the parties to such suit, a description of the real estate affected, its ownership, and a brief statement of the nature and amount of the lien sought to be fixed. (b) Until same is so filed, so far as concerns the rights of bona fide purchasers and encumbrancers, for value, of the realty, or any interest therein, they shall not be affected. [Code 1932, § 8053; T.C.A. (orig. ed.), § 20–301.] (Emphasis supplied.)

T.C.A. §§ 66–26–101 and 103 are with immaterial changes the same as 1858 Code §§ 2072 and 2075. § 66–24–101 provides a list of 21 types of instruments which may be recorded. Deeds are listed but notices of lis pendens are not so listed. § 66–26–103 provides:

Unregistered instruments void as to creditors and bona fide purchasers.—Any of said instruments not so proved, or acknowledged and registered, or noted for registration, shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice. [Code 1858, § 2075 (deriv. Acts 1831, ch. 90, § 12; 1841–1842, ch. 12, § 2); Shan., § 3752; mod. Code 1932, § 7668; C.Supp.1950, § 7668; T.C.A. (orig. ed.), § 64–2603.]

Since the decision in *Sharp v. Hunter,* the Legislature has supplied what was noted as missing in *Sharp v. Hunter,* that is, statutory authority for registering an effective notice of lis pendens, and has related such registration to the rights of attaching creditors by adding the words "as elsewhere provided" to the former statute on transfer after attachment suit.

That is to say, TCA §§ 29–6–135 and 20–3–101 provide that transfers made after the filing of an attachment suit are void as to the claim of a creditor who has recorded notice of lis pendens before the transfer is recorded.

This change in the law gives full effect to the wording of TCA § 66–26–103, supra that unregistered deeds are void as to creditors (i.e. creditors who have recorded notice of lis pendens).

In *Moore v. Walker,* 178 Tenn. 218, 156 S.W.2d 439 (1941), A.E. Moore deeded real estate to Keel Moore on January 31, 1935, but the deed was not recorded until February 7, 1935. Meanwhile, on February 5, 1935 (before the deed was recorded) John T. Walker filed an attachment suit against A.E. Moore, describing the same property mentioned in the deed. The summons in Walker's suit was not served upon A.E. Moore until February 9, 1935. Keel Moore sued to assert his rights as purchaser against the purchaser at the attachment sale. It was stipulated that the deed to Keel Moore was bona fide and for a valuable consideration. The Supreme Court affirmed a decree dismissing the suit of Keel Moore and, said:

... [U]ntil the deed witnessing this transaction had been recorded, A.E.

Moore remained the owner of the land so far as Walker, his creditor, was concerned. The unrecorded deed was void and nonexistent as to Walker. Code, section 7668.

. . . .

Section 9458 of the Code is in these words: "Any transfer, sale, or assignment, made after the filing of an attachment bill in chancery, or after the suing out of an attachment at law, of property mentioned in the bill or attachment, as against the plaintiff, shall be inoperative and voidable, as elsewhere provided."

. . . .

(5) Construing section 9458 above quoted, this court has held in two well-considered cases that the lien of the attachment on property mentioned or described in an attachment bill takes precedence over a deed to that property made before, but not registered until after, the levy of the attachment. *Hervey v. Champion*, 30 Tenn. (11 Humph.), 569; *Sharp v. Hunter*, 47 Tenn. (7 Cold.), 389. 178 Tenn. at 221, 222, 156 S.W.2d 439.

■ The law, both statutory and decisional, leaves room for argument; but this Court is satisfied that, under the statutes presently in effect, an attaching creditor who records a notice of lis pendens has priority over a bona fide conveyee whose deed is not recorded until after the registration of the lis pendens notice.

■ This disposes of the issue which has been presented by the briefs, but the judgment of the Chancellor, contains another matter which requires clarification, that is, the statement that:

... Commercial Technology, Inc., paid off a mortgage on the subject property ... and ... the mortgage payment equals the value of the property.

■ The doctrine of "equitable lien" follows closely the doctrine of "subrogation". They both come under the maxim, "equality in equity", and are applied in cases where the law fails to give relief and justice would suffer without them. *Shipley v.*

*Metropolitan Life Insurance Co.* 25 Tenn. App. 452, 158 S.W.2d 739.

In *Clark v. Cantwell*, 40 Tenn. (3 Head) 202 (1859), the land of a decedent was sold under a trust deed and the widow redeemed it with her own money. It was held that the widow had an equitable lien upon the land for reimbursement and that, upon non payment by the heirs, the widow might subject their interest in the land to the satisfaction of her claim.

■ It appears that the Chancellor has recognized a valid claim and lien in favor of the intervenor, but this is not conclusive of the issue between the parties. The reasons for this are twofold:

1. The intervenor has rights of recourse, against its vendor, I.V.S. Corporation. The deed from I.V.S. to intervenor makes no reference to an encumbrance or the payment of it by intervenor, and it contains the usual warranty and covenant that the property is unencumbered. Therefore, before granting enforcement of such an equitable lien as that claimed by intervenor, a court of equity should and would require that the intervenor exhaust its remedies against I.V.S.

2. The grant of an equitable lien does not ipso facto confer title. A lien is enforced by *subjecting* the property to satisfaction of the claim secured. This is accomplished in equity by sale of the property, applying the proceeds to satisfaction of the claim and delivering any excess of proceeds over claim to the owner of the next senior claim against the property. In the present case, this would mean selling the property, paying intervenor out of the proceeds and holding any surplus subject to the attachment of plaintiff. The finding of the Chancellor that intervenor's payment of the mortgage exceeded the value of the property cannot substitute for the conclusive procedure of sale and distribution of proceeds according to priority.

The judgment of the Chancellor vacating and dissolving the attachment is reversed. Costs of this appeal are taxed against the

intervenor-appellee. The cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

CANTRELL and KOCH, JJ., concur.