IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 18, 2006 Session

## HOLIDAY HOSPITALITY FRANCHISING, INC., F/K/A HOLIDAY INNS FRANCHISING v. STATES RESOURCES, INC., ET AL.

Direct Appeal from the Chancery Court for Shelby County
No. CH-05-1127-3     D.J. Alissandratos, Chancellor

No. W2006-00845-COA-R3-CV - Filed December 14, 2006

The issue presented in this priority dispute between a first deed of trust holder and a judgment lien creditor involves the legal effect of the inadvertent and erroneous release of the deed of trust. States Resources Corporation (SRC), Defendant/Appellant, holds two liens on the same real property: one as successor-in-interest to a judgment creditor and the other as assignee of a promissory note for a construction loan, secured by a deed of trust originally held by Trust One Bank. Plaintiff/Appellee Holiday Hospitality Franchising (Holiday) also holds a judgment lien that, in relation to SRC's filings, was filed last in time. SRC appeals summary judgment entered in favor of Holiday and contends that as assignee of Trust One's note and first-filed deed of trust, it occupies the most senior lien position, notwithstanding the mistaken release of the deed prior to the assignment. Because Trust One's release was inadvertent and unintended, and because restoring the deed of trust to its original priority position would not prejudice the rights of Holiday, an intervening judgment lien creditor, we hold that, as a matter of law, the mistaken release should be cancelled in part and the deed as to Lot 30 should be restored to its position as first deed of trust. Accordingly, we reverse and remand.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed; and
Remanded

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Stephen L. Hughes, Milan, Tennessee, for the appellant, States Resources, Inc.

Robin H. Rasmussen, Memphis, Tennessee, for the appellee, Holiday Hospitality Franchising, Inc.

### OPINION

This dispute focuses on a secured creditor's mistaken release of a deed of trust for real property securing a construction loan. At issue is the effect of this release upon the order of priority

between the security interests of States Resources Corporation (SRC) and Holiday Hospitality Franchising (Holiday). On appeal, SRC claims the first and second positions through, respectively, the deed of trust at issue (acquired from Trust One Bank (Trust One)) and a judgment lien it obtained as a successor-in-interest to a judgment creditor. Conversely, Holiday asserts a second lien position through the judgment lien it filed after the deed of trust had been released.

### *Trust One Bank's Deed of Trust*

On April 21, 2000, on behalf of Talley Builders, Inc., Thomas Talley (Mr. Talley) executed two promissory notes and a deed of trust in favor of Trust One Bank (Trust One) to secure a construction loan for improving two lots. The deed of trust encompassed both lots, Lot 13 and Lot 30, located in the Brunswick Farms Subdivision in Shelby County. Trust One promptly recorded the deed of trust in the Register's Office in Shelby County.

The problems began when Mr. Talley sold Lot 13 and used the proceeds to satisfy a portion of his debt to Trust One. In conjunction with the closing of the sale of Lot 13, Trust One recorded a trust deed release purporting to release the "[p]roperty as described in Deed of Trust of record at Instrument Number KD 7805." The property referenced by the release comprised both lots, not just Lot 13, and the deed release further stated, without equivocation, that "[a]ll of the notes described in and secured by said trust deed have been paid in full" and that "as legal owner and holder of the notes secured by said trust deed, [Trust One] releases and discharges the lien of said trust deed, and to this end [quitclaims] and conveys unto [Talley Builders and its assigns] all its right, title, and interest in . . . the [described] real estate." Yet, the following notation appeared in the bottom left corner of the document: "Talley Builders, Inc./Lot 13, Brunswick Farms Subdivision." The deed of conveyance of Lot 13 was filed of record on August 28, 2001, and the trust deed release was filed approximately two weeks thereafter.

On June 17, 2002, Talley Builders, Inc. conveyed Lot 30 by quitclaim deed to Mr. Talley (individually), and Mr. Talley then assumed the balance of the debt owed to Trust One, approximately $213,891. Mr. Talley and Trust One Bank executed a Modification and Assumption Agreement without Release and filed it along with the quitclaim deed on July 11, 2002.

Little more than a month had elapsed after the filing of these instruments when Mr. Talley conveyed Lot 30 to his wife, Martha Reed Talley (Ms. Talley); he then recorded the quitclaim deed approximately two and a half months after the conveyance. Tragically, Ms. Talley was killed in an automobile accident on August 2, 2003. Ms. Talley devised Lot 30 to Mr. Talley in her will, which was admitted to probate in Shelby County on September 2, 2003.[1]

---

[1] Mr. Talley's answer indicated he had insufficient knowledge of whether Lot 30 actually passed to him under Ms. Talley's will. SRC admitted in its answer that Mr. Talley was the beneficiary under his wife's will and that her will had devised Lot 30 to him; however, SRC denied that Lot 30 was subject to Ms. Talley's estate administration because the conveyance to her was fraudulent.

*SRC's Judgment Lien*

After the conveyance of Lot 30 to Ms. Talley, SRC, as successor-in-interest to the Bank of Alamo, obtained a judgment against Mr. Talley in the Crockett County Chancery Court on June 24, 2003, in the amount of $132,062.44 plus court costs.[2] SRC learned of Mr. Talley's conveyance of Lot 30 to his wife and, shortly after Ms. Talley's death, filed suit against the Talleys in Shelby County Chancery Court, averring fraudulent conveyance and seeking a writ of attachment. SRC then filed a number of records with the Shelby County Register of Deeds. First, it filed a certified copy of the Crockett County judgment on August 27, 2003. It later filed a notice of lien lis pendens in connection with its fraudulent conveyance action, as well as an abstract of the Crockett County judgment.

*Holiday's Judgment Lien*

Meanwhile, Holiday obtained a judgment for $92,648.27 against Mr. Talley in the State Court of DeKalb County, Georgia on February 3, 2004. Holiday then registered its foreign judgment and obtained an order of judgment from the Shelby County Circuit Court on December 14, 2004. It perfected its interest by filing a synopsis of its judgment lien on Lot 30 on January 4, 2005.

*Trust One's Assignment and Corrective Filings*

After Holiday filed its judgment lien in January 2005, Trust One assigned the unpaid note and deed of trust to SRC. The parties executed the absolute assignment on April 12, 2005, and, one month later, Trust One executed two documents: one purporting to cancel the release and reinstate the deed of trust, and another releasing the deed of trust as to Lot 13.[3] Both documents were then filed with the Shelby County Register of Deeds on May 17, 2005.

*Award of Summary Judgment*

Holiday filed a complaint on June 16, 2005, seeking a declaratory judgment establishing the superiority of Holiday's lien and resulting entitlement to payment in full from SRC. The complaint also prayed for a declaration that Trust One's cancellation of release was void and that, after the assignment to SRC, Trust One lacked authority to make the filing. Additionally, Holiday sought a temporary restraining order enjoining the disbursement of foreclosure sale

---

[2]According to a subsequent complaint filed by SRC against Mr. Talley, the Crockett County judgment pertained to Mr. Talley's default on a promissory note maturing on September 3, 2002. The judgment was unrelated to this action.

[3]The partial release appears to be missing from the record; however, the record does contain the register's stamp confirming the filing of a partial release, and the parties do not dispute the contents of the filing. We therefore will presume that Trust One filed the partial release as to Lot 13, along with the cancellation of the full release, in the office of the Shelby County Register of Deeds on May 17, 2005.

proceeds[4] as well as an order requiring payment of the funds into the court pending the resolution of the case.

SRC denied Hospitality's assertion of lien priority and instead charged that SRC occupied the first and second positions, leaving Holiday in a third priority position. It counterclaimed for a declaration that, notwithstanding the released deed of trust, it retained its superior priority position. As Counter-Plaintiff, SRC averred that the release was not a full release; that, alternatively, the erroneous release had been executed and filed because of mutual mistake; that after the release, Trust One continued to demand, and Mr. Talley continued to remit, payment on the remaining indebtedness; that Holiday had not relied upon recorded title information in asserting its judgment lien; and that equitable principles justified a reformation of the release to reinstate the original deed of trust. It prayed for a declaration of the validity of Trust One's corrective filings or, alternatively, for reformation of the release to reflect the intended partial release.

SRC submitted, among various documents, three affidavits in support of its motion for summary judgment. By sworn affidavit, Thomas E. Willingham, a Senior Vice President at Trust One Bank, stated that Trust One had intended to effect a partial release as to Lot 13, as only that portion of the debt had been satisfied; that to the extent Trust One fully released the deed of trust, its filing constituted a mistake; and that, subsequent to this filing, Trust One continued to collect Mr. Talley's payments on the remaining debt. Mr. Talley corroborated these points in his affidavit and confirmed his continued payments, remitted under the belief that Lot 30 still secured his debt to Trust One. Finally, Cory Butler, an employee of SRC, confirmed by affidavit SRC's ownership of the note and deed of trust by way of an absolute assignment from Trust One.

Both parties moved for summary judgment. Notably, Holiday sought a declaration that it occupied the second lien position, junior only to SRC's judgment lien. After a hearing on the motions, the chancellor granted Holiday's motion for summary judgment and made the following findings:

A)   That Trust One, as the Predecessor in interest to SRC, created a public record releasing its security interest in Lot 30.

B)   That Holiday is entitled to take advantage of every legal opportunity to collect its judgment.

C)   That T.C.A. § 66-26-103, et seq. must be construed strictly to give the intent of the legislature that the statute . . .be read according to its ordinary and plain meaning of the words.

---

[4]SRC had published a Notice of Sale in *The Daily News* and advertised the date of foreclosure sale as June 17, 2006, the day following Holiday's filing. SRC, however, voluntarily withdrew from conducting the foreclosure sale as advertised.

D)      That the cancellation of the Trust Deed Release did not operate to reestablish Trust One's (now SRC) priority lien position against subsequent judgment lien holders.

E)      That Trust One (SRC) is not entitled to an equitable lien creating priority over [SRC's and Holiday's judgment liens.]

F)      That as between [the interests of Holiday and SRC, the following priority exists:

    1.      SRC Judgment Lien
    2.      Holiday Judgment Lien
    3.      Trust One/SRC Deed of Trust]

Before turning to the applicable law, we will first attempt to reduce this narrative to a manageable time line of events. Rather than releasing Lot 13, Trust One filed a release encompassing both Lots 13 and 30. Yet, the debt on Lot 30 remained unpaid, and the course of performance between Trust One and Mr. Talley continued as if Lot 30 still secured the remaining debt. Mr. Talley assumed the debt and terms of the deed of trust when his business conveyed title of Lot 30 to him individually. He then conveyed title to his wife. Approximately eleven months later, a judgment against Mr. Talley was entered in Crockett County. Ms. Talley then died in an auto accident, and her will devised Lot 30 to Mr. Talley. After Ms. Talley's death, SRC filed a fraudulent conveyance complaint against the Talleys, its Crockett County judgment lien, a lien lis pendens, and an abstract of the Crockett County judgment. Holiday then filed its lien. Trust One subsequently assigned the debt and deed of trust to SRC and then attempted to correct the mistaken release by filing a cancellation of release and a partial release as to Lot 13. Asserting a second lien position, Holiday prevailed on summary judgment in the trial court.

### *Issue Presented*

We recognize the multiple issues[5] presented by these facts but restrict our review to the only one raised by the parties. As presented by the parties to this appeal, the single issue before this Court is whether SRC's deed of trust is superior to Holiday's judgment lien. Thus, we now

---

[5]Even though SRC's answer disputed whether Lot 30 constituted an asset of Ms. Talley's estate, we will not resolve that question here. SRC's basis for this assertion rested upon a separate fraudulent conveyance action it filed but later decided to hold in abeyance pending a determination of the estate's solvency. Additionally, the parties do not dispute the priority of SRC's judgment lien, filed after Ms. Talley died. They agree that SRC's judgment lien is superior to Holiday's. Accordingly, we need not resolve issues impacting its status, such as when SRC's judgment lien attached to Lot 30 or whether, with respect to SRC's lien, Lot 30 would constitute after-acquired property and potentially alter the distribution of foreclosure proceeds. Nor must we determine how SRC stands in relation to creditors of Ms. Talley's estate.

consider whether the chancellor erred in awarding summary judgment to Holiday and declaring its judgment lien to be superior to SRC's deed of trust.

## *Standard of Review*

A determination of the priority of rights among the holders of liens and mortgages is solely a question of law when the parties do not dispute the facts. *Bankers Trust Co. v. Collins,* 124 S.W.3d 576, 578 (Tenn. Ct. App. 2003); *ATS, Inc. v. Kent*, 27 S.W.3d 923, 924 (Tenn. Ct. App. 1998) (citing *Lucius v. City of Memphis,* 925 S.W.2d 522, 522 (Tenn. 1996)). When addressing questions of law, we review the trial court's ruling *de novo* upon the record and afford to it no presumption of correctness. *ATS, Inc.*, 27 S.W.3d at 924.

In this case, the trial court resolved the matter by granting summary judgment in favor of Holiday. Summary judgment is appropriate when the movant establishes that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04. Because no material issues of fact are disputed here, nor have any arisen on review, we consider whether Holiday or SRC is entitled to judgment as a matter of law.

## *Analysis*

To identify which party holds the superior interest, we must address two fundamental sub-issues: (1) whether, under Tennessee's registration laws, the released deed of trust remains effective as against Holiday; and, if not, (2) whether the equitable remedy of reinstating SRC's deed of trust is appropriate. We hold that SRC is entitled to partial reinstatement of the deed of trust and, thus, to judgment as a matter of law.

### *Tennessee's Registration Laws*

On appeal, the parties first invoke different theories from Tennessee's registration laws. Holiday emphasizes that SRC's interest in Lot 30 is unregistered and thus ineffective as against it. SRC, on the other hand, contends that Holiday was on inquiry notice of Trust One's true interest in Lot 30 and that notice prevents Holiday from now challenging SRC's priority position.

Holiday contends that SRC's deed of trust is null and void as against Holiday, whose interest in Lot 30 arose on January 4, 2005, when it recorded its judgment against Mr. Talley in the Shelby County Register's office.[6] Under Tennessee's recording system, an unregistered

---

[6]A judgment obtained in Tennessee becomes a lien on the debtor's real property when the judgment is recorded in the register's office of the county where the land is located. *See* Tenn. Code Ann. § 25-5-101(b) (2000 & Supp. 2006). Upon proper recordation, the judgment also becomes effective against any person having or later acquiring an interest in the debtor's real property regardless of whether that person was a party to the action resulting in the judgment. *See* Tenn. Code Ann. § 25-5- 101(c) (2000 & Supp. 2006); Tenn. Code Ann. § 66-24-119 (2004 & Supp. 2006). Moreover, once a judgment lien attaches to land, it remains with the land and cannot be destroyed by the debtor's subsequent

(continued...)

instrument affecting an interest in real property is effective as between the parties but cannot bind third parties without actual notice until the instrument is properly registered. *See* Tenn. Code Ann. § 66-26-101 (2004 & Supp. 2006). Tennessee Code Annotated Section 66-26-101 provides, in pertinent part, that "[a]ll of the instruments [that may be registered as provided by] § 66-24-101 shall have effect between the parties to the same, and their heirs and representatives, without registration; but as to other persons, not having actual notice of them, only from the noting thereof for registration on the books of the register, unless otherwise expressly provided." *Id.* Such unregistered instruments are "null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice." Tenn. Code Ann. § 66-26-103 (2004 & Supp. 2006). In essence, the failure to record leaves the debtor/grantor's real property vulnerable to the grantor's creditors, who can seize the land to satisfy the outstanding debt. *See id.* On the other hand, properly recorded instruments place the world on notice of the interest described therein and are effective as against all the world. *See* Tenn. Code Ann. § 66-26-101 (2004 & Supp. 2006).

According to Holiday, SRC's interest in Lot 30 is unperfected and unregistered because of the release Trust One recorded in September of 2001. Invoking Tennessee Code Annotated Section 66-26-103, Holiday contends SRC's unregistered security interest in Lot 30 is null and void as against the creditors of Talley, Inc. Even more, it asserts that this provision alone prevents the reformation or setting aside of Trust One's mistaken release. Such a result would, of course, leave the real property of Talley, Inc., the grantor of the deed, vulnerable to its creditors.[7]

On summary judgment and now on appeal, Holiday relies on *In re: Tate*, 2000 WL 33912550 (Bankr. E.D. Tenn. 2000), as support for this position. In that case, a creditor mistakenly released its deed of trust and sought restoration of the deed after the debtor had filed for bankruptcy. *In re: Tate*, 2000 WL 33912550, at *2 - *3 (Bankr. E.D. Tenn. 2000). The court acknowledged that the deed became an equitable lien when mistakenly released but found it to be merely an unregistered interest. *Id* at *6. As such, the creditor's unrecorded lien was void as against the debtors in possession, statutory "creditors"[8] whose rights attached at the time of the bankruptcy petition. *Id.* at *6. The court specifically relied upon Tennessee Code Annotated section 66-26-103 in declining to restore the deed to its priority position. *Id.* at *6. It likewise

_____

[6](...continued)
alienation of the property. *ATS, Inc.,* 27 S.W.3d at 925.

[7]As we have noted, the grantor's creditors could seize the property from subsequent grantees, assuming the grantor conveyed title after the creditor's lien had attached.

[8]Pursuant to 11 U.S.C.A. § 544(a) (2004 & Supp. 2006), at the commencement of a bankruptcy case, the bankruptcy trustee assumes the rights and powers of a judgment lien creditor, an execution creditor, and a bona fide purchaser of real property and, by way of an adversarial avoidance action, may avoid voidable, pre-petition liens. *In re: Tate*, 2000 WL 33912550, at *6 (Bankr. E.D. Tenn. 2000); *see* 11 U.S.C.A. § 544(a) (2004 & Supp. 2006). In this case, the debtors were entitled to exercise these "strong arm" powers as debtors in possession under Chapter 11. *In re: Tate*, 2000 WL 33912550, at *2–*3 (Bankr. E.D. Tenn.) (citing 11 U.S.C.A. § 1107(a) (West 1993)).

relied on that provision in denying the creditor's request for reformation, an equitable remedy we address below. *Id.*

Emphasizing a different aspect of Tennessee's registration laws, SRC instead relies on the application of inquiry notice to judgment lien creditors. SRC argues that Holiday cannot prevail on its bid for the second priority position because the recorded conveyance of Lot 13, the Trust Deed Release, and the subsequent corrective filings placed Holiday on inquiry notice of the true scope of the deed release. As best we can determine, SRC appears to assume the release rendered the original deed of trust unregistered; moreover, SRC seems to imply that even though technically unregistered, the deed of trust remained effective as against Holiday because the subsequent filings placed Holiday on inquiry notice. Tennessee law recognizes inquiry notice as a form of actual notice. *Blevins v. Johnson County*, 746 S.W.2d 678, 683 (Tenn. 1988). Inquiry notice is "'knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to ultimate facts.'" *Id.* (quoting *Texas Co. v. Adcock*, 227 S.W.2d 41, 46 (Tenn. 1950)). A good faith failure to seek out the ultimate facts constitutes no defense, and a party asserting this argument is still chargeable with the undiscovered facts so long as a reasonably diligent inquiry would have uncovered them. *See id.*

According to our research, under Tennessee law, notice has never impacted the priority position of judgment lien creditors. *See McCoy v. Hight*, 39 S.W.2d 271, 272 (Tenn. 1931); *Wilkins v. McCorkle*, 80 S.W. 834, 835 (Tenn. 1904); *Lookout Bank v. Noe*, 5 S.W. 433, 436 (1887)("[I]t [is] well settled that attaching creditors are not affected by notice of unregistered instruments."); *Hames v. Archer Paper Co.*, 319 S.W.2d 252, 258 (Tenn. Ct. App. 1958). Indeed, in addressing Tennessee's statutory treatment of unrecorded instruments, the Tennessee Supreme Court interpreted Sections 2072 and 2075 of the 1858 Code, the precursors of Tennessee Code Annotated Sections 66-26-101 and -103, thus:

> It is perceived there are five leading propositions embraced in the foregoing sections: (1) That, as between the parties themselves and their heirs and representatives, such instruments take effect and are good without regard to registration; (2) *that they also take effect and are equally good as to all persons who have actual notice of them from the date of such notice, except creditors*; (3) *that as to creditors (that is, of the vendor) they are inoperative, ineffective, and practically nonexistent until they are noted for registration on the books of the register;* (4) that as to all other persons (that is, all not embraced in the preceding classes) they are equally inoperative, ineffective, and nonexistent until so noted for registration; (5) that upon being so 'noted for registration' they become at once 'notice to all the world,' and so effective as to all the world.

*Wright v. Black,* 17 S.W.2d 917, 918 (Tenn.1929) (quoting *Wilkins v. McCorkle*, 80 S.W. 834, 835 (Tenn. 1904))(emphasis added).[9] According to this unequivocal authority, SRC's inquiry notice argument lacks merit. Notwithstanding this fact, as well as Holiday's well-placed reliance upon Tennessee Code Annotated Section 66-26-103, SRC may still seek its remedy in equity. We now address this portion of its argument.

*The Equitable Restoration of the Deed to its Original Priority*

1. The Appropriate Remedy

Throughout its filings, SRC has understandably requested various forms of relief such as reformation of the release, cancellation of the release, reinstatement of the deed of trust, and the voiding of the release. The relevant case law reveals that either of two lines of authority, with slightly different rules, could arguably control this case. One alternative governs the reformation of instruments, and the other pertains to the cancellation of erroneous releases. Apart from differing terms of art, the primary practical distinction between the two lies in the type of error deserving equitable relief. A number of bankruptcy courts[10] applying Tennessee law have recently used these remedies and standards interchangeably and failed to distinguish between them; thus, we perceive the need to clarify the distinction and explain our selection of authority here.

Under reformation principles, the erroneously drafted instrument must result from *mutual* mistake, whereas inadvertence or unilateral mistake can satisfy the requirements for cancellation, so long as the error was unintended by both parties. *Compare Barker v. Harlan*, 71 Tenn. 505 (1879) (denying reformation in absence of proof of assent by all parties to include omitted creditor in instrument) *and McMinnville v. Rhea*, 316 S.W. 2d 46, 52 (Tenn. Ct. App. 1958) (granting reformation where deed omitted part of property both parties intended to be conveyed) *with Needham v. Caldwell*, 154 S.W.2d 535, 538 (Tenn. Ct. App. 1941) (reinstating portion of deed of trust mistakenly released by senior deed holder, without reference to debtor's

---

[9] This Court has found steadfast authority in this century-old statement, in spite of the substantial time lapse and intervening statutory amendments. In 1984, we noted that Tennessee Code Annotated Sections 66-26-101 and -103 "are with immaterial changes the same as 1858 Code §§ 2072 and 2075." *W. & O. Const. Co. v. IVS Corp.,* 688 S.W.2d 67, 70 (Tenn. Ct. App. 1984).

The General Assembly's 2005 amendment to Tennessee Code Annotated Section 66-26-103 narrowed its scope of application to instruments not "registered" or "noted for registration." *See* Tenn. Code Ann. § 66-26-103 (Supp. 2006) (amending Tenn. Code Ann. § 66-26-103 (2004) and excluding the classes of instruments not "proved," or "registered and acknowledged"). Although the amendment apparently altered which instruments qualify as unregistered for purposes of record notice, it did not modify the *effect* of an instrument's unregistered status. *See id.* Because this effect remains unchanged, the Tennessee Supreme Court's interpretation of these provisions remains as authoritative today as it was in 1984.

[10] *See, e.g., In re: Miller*, 286 B.R. 334, 341 (Bankr. E.D. Tenn. 1999) (erroneously attributing reformation principles to Tennessee authority explicitly relying on cancellation theory); *In re: Tate*, 2000 WL 33912550 at *5 (Bankr. E.D. Tenn. 2000).

mistake) *and Hamilton Nat'l Bank of Chattanooga v. Duncan,* 132 S.W.2d 353, 354(Tenn. Ct. App. 1939) (reinstating deed of trust erroneously and unilaterally released by bank).

Pursuant to Tennessee law, a court of equity, under certain conditions, will reform an instrument or deed when it fails to reflect the true intent of the parties. The error in the instrument must have occurred because of the mutual mistake of the parties or because of one party's mistake induced by the other party's fraud. *Kozy v. Werle*, 902 S.W.2d 404, 411 (Tenn. Ct. App. 1995). A mutual mistake requires all parties to the contract or instrument to have participated in the error and labored under the same misconception. *Collier v. Walls*, 369 S.W.2d 747, 760 (Tenn. Ct. App. 1962)(denying plaintiffs' request for rescission of release where plaintiff discovered neck injury after executing release). A unilateral mistake or mere oversight by one party cannot be the subject of correction by reformation. *Barker v. Harlan*, 71 Tenn. 505, 508 - 09 (1879).

The requirement of mutuality in this context protects a party to a contract from the other party's unilateral alteration of contractual rights and obligations. The understanding of one party to a contract cannot have binding effect when it has not been communicated to the other party. *Kozy*, 902 S.W.2d at 411(quoting *Ward v. Berry & Assoc.,* 614 S.W.2d 372 (Tenn. 1981)). For example, the Tennessee Supreme Court in *Barker v. Harlan* considered whether a debtor/grantor, whose post-conveyance trust deed modification was under attack, could have succeeded in an action to reform the deed. *Barker*, 71 Tenn. at 508-09. In that case, the court held that the debtor would have failed in his attempt to reform the deed so as to add a creditor whom his attorney had mistakenly omitted from the recital of secured creditors in the original deed of trust. *Id*. The court characterized the error as a unilateral mistake, or an oversight, not entitled to reformation. *Id.* It reasoned that, absent evidence of the other creditors' assent, reformation would unfairly allow the debtor to diminish the rights of the parties to the contract. *See id.* at 509. Similarly, the mutuality requirement holds parties to the contractual obligations to which they originally agreed. In *McMinnville v. Rhea*, 316 S.W.2d 46 (Tenn. Ct. App. 1958), this Court held that the purchaser of property was entitled to reformation of its deed where evidence established that the deed failed to include all the land the defendant/grantors agreed to convey and the plaintiff/grantees agreed to purchase. *McMinnville*, 316 S.W.2d at 52.

Although the remedy of reformation is susceptible to broad application, we believe it is inappropriate in this context. The instant case does not involve the original parties to the deed of trust, nor those claiming under or through them.[11] More importantly, though, the dispute does not involve the binding terms of the agreement as originally understood by Talley, Inc. and Trust One. The facts here also appear to be more akin to an oversight rather than mutual mistake in its truest sense; although Mr. Talley believed the release to be partial, the error lay in Trust One's performance of its duty to draft and file the release, an act that did not require or involve Mr. Talley's participation. We therefore decline to utilize the standards for reformation in this case, as the nature of the dispute and posture of the parties do not comport with the contract principles

---

[11]This fact alone does not determine our decision to pursue a different line of analysis.

underlying the remedy. Although some courts[12] have found mutual mistake to exist in circumstances similar to these, we must respectfully disagree and analyze this case according to the standard for cancelling mistaken trust deed releases.

## 2. Cancellation of Erroneous Releases

The existence of an equitable lien in the creditor provides the foundation for a court to restore a released deed of trust to its priority position. Under Tennessee law, the mistaken release of a recorded deed of trust creates an equitable lien in favor of the creditor. *Jetton v. Nichols*, 8 Tenn. App. 567, 574 (Tenn. Ct. App. 1928) ("A lien discharged by mistake is, in contemplation of equity, still in existence."). An equitable lien is "the right to have the property subjected in a court of equity to the payment of the claim. It is a floating equity until action by the court is invoked." *Osborne v. McCormack*, 176 S.W.2d 824, 824–25 (Tenn. 1944). A court of equity will restore a lien where the parties intended that it should not be extinguished, so long as the intervening rights of third parties do not prevent the reinstatement. *Needham v. Caldwell*, 154 S.W.2d 535, 538 (Tenn. Ct. App. 1941); *Hamilton Nat'l Bank of Chattanooga v. Duncan*, 132 S.W.2d 353, 354 (Tenn. Ct. App. 1939); *Jetton*, 8 Tenn. App. at 574. In such a case, cancellation, not reformation, is the proper remedy. *See Needham*, 154 S.W.2d at 538. When a third party has acquired an interest in the property and acted to its prejudice in reliance on the release, its rights will generally preclude cancellation of the release and restoration of the deed to its priority position. *Id.* If, however, reinstatement would place the third party in no worse position than before the release, its rights cannot serve as a barrier to this equitable remedy. *See id.*

SRC's pleadings and affidavits provide ample support for the unintended and erroneous nature of the full release. This element requires no further discussion. The more demanding issue before us - - one of first impression - - is whether the intervening rights of Holiday as a judgment lien creditor prevent the reinstatement of SRC's deed of trust to its original, superior position. For the following reasons, we think not.

We rely upon the principles espoused in the case of *Needham v. Caldwell,* 154 S.W.2d 535 (Tenn. Ct. App. 1941)*,* to support this result.[13] In that case, a junior deed holder claimed

---

[12]*See, e.g., In re: Wilson,* 261 B.R. 664, 667 (Bankr. E.D. Tenn. 2001) (finding mutual mistake where debtor did not believe creditor had released its interest, notwithstanding debtor's lack of involvement in and ignorance of creditor's mistake); *In re: Miller*, 286 B.R. 334, 341 (Bankr. E.D. Tenn. 1999).

[13]The Tennessee Supreme Court case of *Fidelity Mutual Life Ins. Co. v. Guess*, involving an insurance agent's fraudulent procurement of a trust deed release, lends weight to this authority. *Fid. Mut. Life Ins. Co. v. Guess*, 101 S.W.2d 694, 697 (Tenn. 1937). The court set forth a rule for relief from fraudulent releases and stated that, because the equities are balanced between an innocent, "injured mortgagee" and a subsequent purchaser of title or subsequent mortgagee (both of whom would rely on the release of record), a court will reinstate the fraudulently released deed of trust. *Id.* Reinstatement is proper where the equities are balanced because the released deed was filed first in time. *Id.* On the other hand, where the trust deed holder seeking reinstatement contributes in any way to the release, the equities

(continued...)

priority over a senior deed holder on the basis of the first deed holder's inadvertent release of its trust deed. *Needham*, 154 S.W.2d at 536. Importantly, though, the junior lienor had knowingly accepted a second mortgage and acknowledged its inferior position on its deed of trust. *Id.* This Court restored the first deed holder's priority position, holding cancellation of a release to be appropriate when, contrary to the parties' intent, a deed of trust has been erroneously discharged, so long as the rights of third parties do not prevent the deed's reinstatement. *Id.* at 538. Addressing the rights of the third party junior lienor, this Court quoted Corpus Juris on Mortgages, 41 C.J. *Mortgages* § 548, as follows:

> Generally, where the release or satisfaction of the mortgage is the result of fraud, accident, or mistake, it will not inure to the benefit of a person acquiring an interest in the property, who did not rely or advance anything on the face of such discharge. As the discharge, under such circumstances, did not enter into, or induce the transaction, the annulment thereof and the restoration of the mortgage to its priority of lien does not operate as a [prejudice] or place the person who acquired the interest in a worse position than he was before.

*Id.* Because the junior deed holder in *Needham* had decided to loan money to the debtor with full knowledge of the first deed, its rights did not prevent the cancellation of the release. *Id.*

In our estimation, because a judgment lien creditor has no duty to inspect title records and advances nothing in reliance on record notice, its intervening rights will ordinarily not preclude relief for the deed holder. Indeed, as noted above, the judgment lienor's interest attaches upon the filing of the judgment in the appropriate office, and record notice does not affect the lienor's rights. It only seems equitable to balance this benefit of absolution from record notice with the risk of deed reinstatement, where such restoration places the judgment lien creditor in no worse position.

In cases involving mistakenly released deeds of trust, some bankruptcy courts have reflected a different approach in resolving priority disputes between pre-petition creditors and bankruptcy trustees. *See, e.g., In re: Miller,* 286 B.R. 334, 342 (Bankr. E.D. Tenn. 1999) ("Under Tennessee law, an unrecorded equitable lien would be void and would not prevail over intervening judicial lien creditors or bona fide purchasers without notice."); *In re: Tate,* 2000 WL 33912550, at *6 (Bankr. E.D. Tenn. 2000) ("As [judgment] lien creditors and as execution creditors under [the Bankruptcy Code's strong arm provisions], the . . . debtors in possession may

---

[13](...continued)
are not balanced, and reinstatement is inappropriate. *Id.* The Tennessee Supreme Court found that the insurance company had contributed to the release by forwarding the note to the agent for collection, thus making him its lawful holder, and accordingly denied its request for relief. *Id.*

In *Needham*, this Court began its analysis with this rule, but, finding it inapplicable, applied a rule based on the same principles underlying the fraudulent release rule. *See Needham*, 154 S.W.2d at 538 (quoting from Corpus Juris on Mortgages, first, a restatement of the fraudulent release rule and, second, "on the same principle," the rule for mistaken releases).

avoid [an] unrecorded equitable lien.  Pursuant to Tenn. Code Ann. § 66-26-103, . . . [i]t is well-established in Tennessee that 'the lien of a judgment creditor defeats the rights of an unrecorded mortgage holder.'" (quoting *In re: Muller*, 185 B.R. 552, 554 (Bankr. M.D. Tenn. 1995) and *In re: Anderson*, 30 B.R. 995, 1007–08  (Bankr. M.D. Tenn. 1983))).  The decisions of bankruptcy courts do not bind this Court, and we must respectfully disagree with the foregoing interpretations of Tennessee law pertaining to the intervening rights of judgment lien creditors.  In any event, the intervening rights of bona fide purchasers without notice - - rights also possessed by the bankruptcy trustee under the strong arm provisions of the Bankruptcy Code - - would preclude the reinstatement of a mistakenly released deed of trust if the purchaser could assert lack of notice.  Thus, to the extent the bankruptcy debtors above could assert bona fide purchaser status, we can only disagree with the interpretation of Tennessee law, but not the results, reflected in the foregoing cases.

Unlike a purchaser of real property or a mortgagee, both of whom have an affirmative duty to conduct title searches, Holiday merely filed the synopsis of its judgment lien in the appropriate office.  As a judgment lien creditor, Holiday did not act to its prejudice in reliance on the deed release for Lot 30.  Moreover, the reinstatement of SRC's mistakenly released deed of trust would place Holiday in no worse position than it would have been absent the release.

Accordingly, we reverse the chancellor's award of summary judgment and remand the case for entry of summary judgment in favor of SRC and for a declaration of the parties' relative priorities as outlined here.  Costs of this appeal are taxed to the Appellee, Holiday Hospitality Franchising, Inc., for which execution shall issue if necessary.

_____
DAVID R. FARMER, JUDGE