# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### January 21, 2014 Session

## THE BANK OF NEW YORK MELLON f/k/a THE BANK OF NEW YORK, et al. v. WILLIAM BARRY GOODMAN, et al.

**Appeal from the Chancery Court for Williamson County**
**No. 40241     Timothy L. Easter, Judge**

---

**No. M2013-01372-COA-R3-CV - Filed April 16, 2014**

---

Bank made a loan to an individual who owned real property and obtained a deed of trust on the property securing the loan. Bank recorded the deed of trust in the wrong county. A few years later Second Bank obtained two judgment liens and properly registered them in the correct county. Bank later realized its error and registered its deed of trust in the correct county but was by that time in the junior creditor position. Bank filed a complaint seeking equitable subrogation in an effort to obtain the priority creditor position and get placed ahead of Second Bank, which had no security interest in the property at issue, but which had filed its liens first. The trial court denied Bank this relief after balancing the equities of the parties. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

BEN H. CANTRELL, SR. J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Glenn B. Rose and John David McDowell, Nashville, Tennessee, for the appellant, The Bank of New York Mellon f/k/a The Bank of New York.

James Douglas Kay, John B. Enkema, and Benjamin Ealey Goldammer, Nashville, Tennessee, for the appellant, Dana Baugh Goodman.

David M. Smythe, Nashville, Tennessee, for the appellee, Pinnacle Bank, f/k/a Pinnacle National Bank.

# OPINION

The Bank of New York Mellon, f/k/a The Bank of New York[1] ("BNYM") filed a complaint seeking (1) the reformation of a deed of trust to include the correct legal description of the real property at issue and to identify correctly the county in which the property is situated; and (2) a declaratory judgment that it is entitled to be equitably subrogated to the lien positions held by the defendant, Pinnacle Bank ("Pinnacle"), with the result that BNYM's mortgage lien has priority over Pinnacle's judgment liens.

## I. BACKGROUND FACTS

### A. Countrywide's Transaction

The property at issue in this dispute is located on Edinburgh Drive, in Williamson County (the "Property"). As of April 1999, Barry and Dana Goodman were the record owners of the Property. In May 2007, Ms. Goodman sought to refinance the Property through Countrywide Home Loans, Inc. ("Countrywide"). When Ms. Goodman applied for the loan, there were two other mortgages on the Property, one held by SunTrust Bank ("SunTrust") and the other by Fifth Third Bank ("Fifth Third").

Both SunTrust and Fifth Third had properly recorded mortgages on the Property on file with the Williamson County Register's Office. The loan from Countrywide was sought for the purpose of satisfying SunTrust's and Fifth Third's mortgages on the Property. Countrywide made it a condition of its loan that the proceeds be used to pay off SunTrust's and Fifth Third's loans and that Countrywide be granted a first lien on the Property.

The amount of the loan from Countrywide was $1,143,000. When this money was made available in June 2007, Mr. and Ms. Goodman executed a deed of trust ("DOT") in favor of Countrywide for this amount. The DOT and related loan documents were prepared by Countrywide employees and an information services company. The individuals who prepared the DOT, however, made two significant mistakes. First, the DOT identified the Property as being located in Davidson County. Second, the DOT included a legal description and Map and Parcel number not for the Property, but for a different parcel of property Ms. Goodman owned in Davidson County that was not involved in any way with the loan from Countrywide. Rather than being recorded in Williamson County, where the Property was situated, the DOT was recorded in Davidson County.

---

[1]The plaintiff's complete title is The Bank of New York Mellon, f/k/a The Bank of New York, as Trustee for the Certificate Holders of CWALT, Inc., Alternative Loan Trust 2007-0H2 Mortgage Pass-Through Certificates, Series 2007-0H2 by and through First American Title Insurance Company.

Mr. and Ms. Goodman used the proceeds of the loan from Countrywide to pay off their loans from SunTrust and Fifth Third. SunTrust and Fifth Third then filed releases of their mortgages on the Property with the Williamson County Register's Office.

## B. Pinnacle Bank's Transactions

Pinnacle Bank obtained two judgments against Mr. Goodman in 2009. The judgment obtained in October was in the amount of $164,438.61. The judgment obtained in December was in the amount of $72,880.96. The judgments were based on personal guaranties Mr. Goodman had given Pinnacle in connection with two separate loans Pinnacle had made in November 2006 and March 2007 to two companies Mr. Goodman managed. Pinnacle duly filed its judgments with the Williamson County Register's Office in December 2009.

Pinnacle's loans to Mr. Goodman's companies were not secured by the Property. When Pinnacle initially made the loans to Mr. Goodman's companies in 2006 and 2007, the Property was encumbered by SunTrust's and Fifth Third's mortgages. By the time Pinnacle was awarded judgments against Mr. Goodman in 2009, however, there were no liens on the Property recorded in Williamson County.

## C. BNYM as Successor to Countrywide

BNYM acquired the rights of Countrywide pursuant to a corporation assignment executed in May 2011. In June 2011 BNYM recorded a certified copy of the DOT with the Register's Office for Williamson County. As filed, the DOT still contained the incorrect legal description of the Property and incorrectly stated that it was located in Davidson County. In September 2011 BNYM filed this action in an effort to clarify its rights to the Property, naming Barry Goodman, Dana Goodman and Pinnacle Bank as defendants.

## II. Trial Court Proceedings

Both BNYM and Pinnacle filed motions for summary judgment. Ms. Goodman opposed both motions, arguing, *inter alia*, that BNYM has failed to join necessary parties as defendants,[2] thus precluding summary judgment. Following a hearing in March 2013, the trial court issued a Memorandum and Order. The trial court granted BNYM's request for reformation of the DOT to reflect (1) the correct metes and bounds of the Property; (2) the

---

[2]Ms. Goodman asserted the following were necessary parties: Countrywide, Mortgage Electronic Registration Systems, Inc., Robert Wilson, Bank of America Corporation, ReconTrust Company, N.A., the Certificate Holders of CWALT, Inc., CWALT, Inc., Alternative Loan Trust 2007-OH2, Mortgage Pass-Through Certificates, Series 2007-OH2, and BAC Home Loans Servicing, L.P.

3

correct Map and Parcel Number of the Property; and (3) the correct county where the Property is located. However, the trial court concluded, BNYM was not entitled to be equitably subrogated to Pinnacle's position as the priority lien holder, thus denying BNYM's motion and granting Pinnacle's motion on the issue of equitable subrogation. The trial court also denied Ms. Goodman's motion seeking the joinder of additional parties.

The trial court explained that to determine whether equitable subrogation is appropriate, it is necessary to weigh the equities to determine (1) whether BNYM was liable for culpable negligence when its lien was registered in the incorrect county; (2) whether subrogation would be prejudicial to Pinnacle; and (3) where the weight of the equities lies as between the parties.

The trial court first explained that culpable negligence acts as a bar to equitable subrogation, so the first question was whether BNYM was liable for culpable negligence. Citing *Dixon v. Morgan*, 285 S.W. 558 (Tenn. 1926), the trial court explained that ordinary negligence does not rise to the level of "culpable negligence" unless a party has failed to perform a duty owed to another. Finding BNYM was not liable for culpable negligence, the trial court explained:

> A lender records a deed of trust for its *own* benefit. A mortgage is effective between the original parties even if it is unrecorded, and "the primary object[ive] of our registration laws is to protect creditors and innocent purchasers against secret and unrecorded liens." *Dixon*, 285 S.W. at 563; *see also* Tenn. Code Ann. 66-26-101. Failure to record may, by virtue of recordation statutes, impair a mortgagee's rights relative to such third parties, but it does not harm or change the obligations of others. If a lender can be said to have any "duty" to record its security interest, it is a duty to *itself*, it owes no such duty to its borrowers.

Turning next to the question of prejudice, the trial court considered what sort of harm Pinnacle would suffer if BNYM was permitted to subrogate its claim. In determining that Pinnacle would be unfairly prejudiced, the court wrote:

> In determining whether prejudice exists, courts consider whether and what type of harm has resulted to third parties from said negligence. "[W]here no one is injured by the mistake other than the party himself, *and* no one has changed his position in consequence of what has been done and of the mistake, relief may be granted, even though a high degree of care has not been exercised." *Assoc. Home Equity Servs., Inc. v. Franklin Nat'l Bank*, 2002 WL 459007, at *4.

4

There is no dispute in this case that the GC-DOT, transferred to New York Mellon pursuant to a Corporation Assignment executed on May 26, 2011, was mistakenly recorded in Davidson County, Tennessee, rather than Williamson County, Tennessee, where the Property is actually located. There is also no dispute that following this improper recording, Pinnacle obtained two judgment liens against the Property, and properly recorded said liens in the Williamson County Register's Office. Because Pinnacle Bank recorded its deed in the proper county, Williamson County, before New York Mellon, it has priority over the latter's lien unless prejudice warranting equitable subrogation may be established. Thus, the mistake of New York Mellon, that this, improperly recording the deed, if excused, will prejudice Pinnacle Bank as it will convert Pinnacle Bank's judgment liens against the Property from first and second priority liens to second and third priority liens. A lien without first priority may lose its ability to be recovered in full, thus, to lose this position is to Pinnacle Bank's detriment. Because it is clear that New York Mellon's mistake will harm a party other than itself, Pinnacle Bank, by changing its position from priority to junior lien, equitable relief is improper.

Finally, the trial court balanced the equities of the parties and concluded that equity was on the side of Pinnacle in this case. The court explained that equitable subrogation will not be awarded where the equities are equal or where subrogation would prejudice one of the parties' legal or equitable rights, and quoted a decision from the Court of Appeals for the Sixth Circuit:

Everyone makes mistakes, to be sure. But it is difficult to find a basis in . . . law for overlooking this one. [Petitioner] is not just a sophisticated party; its sophistication relates to this precise area of business and law -- lending money and securing the loans with an interest in the borrowers' property. *Mortgage Elec. Reg. Systems, Inc. v. Church*, 423 Fed. App'x 564, 567 (6th Cir. 2011); *see Deutsche Bank Trust Co. Ams. v. Spot Realty, Inc.*, 714 N.W.2d 409, 414 (Mich. Ct. App. 2005) ("[T]he doctrine of equitable subrogation was never intended for the protection of sophisticated financial institutions that can choose the terms of their credit arrangements."); *Devillers v. Auto Club Ass'n*, 702 N.W.2d 539, 556 (Mich. 2005).

The trial court went on to say:

As noted earlier, to substitute New York Mellon as the priority lien holder would strip Pinnacle Bank of its first and second lien rights, which it obtained by properly recording its judgment liens against the Property in

Williamson County. A loss of this senior status could well render its judgment uncollectable, despite any expectations it might have had as priority lien holder.

### III. ISSUES ON APPEAL

BNYM appeals the trial court's decision granting Pinnacle's motion for summary judgment. BNYM argues the trial court erred in finding Pinnacle would be prejudiced by granting BNYM's request for equitable subrogation. BNYM also contends the court's balancing of the equities analysis was unnecessary, and that, based on the undisputed facts, its DOT is entitled to priority over Pinnacle's judgment liens.

Ms. Goodman raises issues on appeal as well. She argues the trial court erred in granting Pinnacle summary judgment on the question of equitable subrogation where indispensable/necessary parties had not been added to the lawsuit. She also argues the trial court erred in granting BNYM's request for reformation of its DOT.[3]

### IV. ANALYSIS

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk Southern Railway Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Cumulus Broad., Inc. v. Shim*, 226 S.W.3d 366, 373 (Tenn. 2007). We review the summary judgment decision as a question of law. *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). Accordingly, this court must review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763. Those requirements are that the filings supporting the motion show there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Blair*, 130 S.W.3d at 764.

The moving party has the burden of demonstrating it is entitled to judgment as a matter of law and that there are no material facts in dispute. *Martin*, 271 S.W.3d at 83; *McCarley v. West Quality Food Service*, 960 S.W.2d 585, 588 (Tenn. 1998). To be entitled to summary judgment, a defendant moving party must either (1) affirmatively negate an essential element of the non-moving party's claim or (2) show that the nonmoving party cannot prove an essential element of the claim. Tenn. Code Ann. § 20-16-101; *Hannan v. Alltel Publishing Co.*, 270 S.W.3d 1, 9 (Tenn. 2008).

---

[3]Pinnacle does not appeal the trial court's decision granting BNYM's request for reformation of the DOT.

## A.  Equitable Subrogation

Both BNYM and Pinnacle filed motions for summary judgment on the issue of equitable subrogation.  As the party requesting this relief, BNYM has the burden of establishing it is entitled to this equitable remedy.  The parties do not dispute the facts set forth above, and both parties agree this issue is properly decided by summary judgment.

The Tennessee Supreme Court has defined equitable subrogation as

> the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debts. The doctrine is one of equity and benevolence, and like contribution and other similar equitable rights was adopted from the civil law, and its basis is the doing of complete, essential, and perfect justice between all the parties without regard to form, and its object is the prevention of injustice. The right does not necessarily rest on contract or privity, but upon principles of natural equity, and does not depend upon the act of the creditor, but may be independent of him and also of the debtor.

*Dixon v. Morgan*, 285 S.W.558, 560 (Tenn. 1926).

Equitable subrogation is an exception to the general rule that a first-filed document has priority over a later-filed document.  The general rule is set forth in Tenn. Code Ann. §66-26-105:

> Any instruments first registered or noted for registration shall have preference over one of earlier date, but noted for registration afterwards; unless it is proved in a court of equity, according to the rules of the court, that the party claiming under the subsequent instrument had full notice of the previous instrument.

Section 66-26-101 provides that instruments, including deeds of trust, "shall have effect between the parties to the same, and their heirs and representatives, without registration; but as to other persons, not having actual notice of them, only from the noting thereof for registration on the books of the register, unless otherwise expressly provided." Section 66-26-103 then makes clear that "Any instruments not so registered, or noted for registration, shall be null and void as to existing or subsequent creditors of, or bona fide purchasers from, the makers without notice."  In other words, a deed of trust need not be recorded to be effective as between the parties to the deed of trust.  However, until it is recorded in the appropriate county office, the deed of trust will not have priority over other

liens recorded earlier in time, even if the liens were obtained after the deed of trust was executed, if the other lienholder was not aware of the earlier deed of trust.

There does not appear to the Court to be any evidence that Pinnacle had any notice or prior knowledge of the existing DOT.

BNYM argues it is entitled to assume the priority position of the banks whose mortgages it refinanced because that is what Countrywide, its predecessor-in-interest, intended when it made the loan to Ms. Goodman and when Mr. and Ms. Goodman signed the DOT. BNYM argues the trial court erred by finding Pinnacle would be prejudiced if BNYM were subrogated to Pinnacle's priority positions because, when Pinnacle made the loans to Mr. Goodman's companies in 2006 and 2007, SunTrust and Fifth Third both had properly recorded mortgages on the Property. Therefore, BNYM reasons, because there were other creditors with priority liens on the Property in 2006 and 2007, Pinnacle had no expectation of being a creditor with priority and would suffer no prejudice if BNYM were now subrogated to Pinnacle's priority positions. BNYM properly points out that the Property did not serve as collateral for Pinnacle's loans to Mr. Goodman's businesses, as it did for BNYM's loan, and Pinnacle neither advanced nor paid any money to anyone with regard to the Property.

BNYM relies on *Holiday Hospitality Franchising, Inc. v. States Resources, Inc.*, 232 S.W.3d 41 (Tenn. Ct. App. 2006), as support for its argument that it is entitled to assume the priority position. In *Holiday Hospitality*, a bank with a deed of trust on two parcels of property, Lots 13 and 30, mistakenly released its interest in both parcels in 2001, when it intended to release its interest only in Lot 13. *Id*. at 44. A judgment creditor subsequently recorded a lien on Lot 30 in January 2005. *Id*. at 45. The bank then assigned its unpaid note and deed of trust to States Resources, Inc. ("SRC"). When it learned of its erroneous release with regard to Lot 30, the bank executed two more documents in May 2005: one purporting to cancel the release and reinstate the deed of trust, and another releasing the deed of trust as to Lot 13. *Id.*

The judgment creditor filed a declaratory judgment action to establish the priority of liens as between it and SRC. *Id.* The judgment creditor took the position that the bank's cancellation of release was void and that its lien had priority over SRC's lien on Parcel 30. SRC disagreed, arguing that its initial release was entitled to reformation due to mutual mistake and that it was entitled to a priority position as creditor. SRC pointed out that the judgment creditor had not relied on recorded title information in asserting its judgment lien. *Id.* at 46.

The trial court ruled that the judgment creditor had priority over SRC. The Court of

8

Appeals reversed, however, finding that the mistaken release of the recorded deed of trust entitled SRC to an equitable lien. *Id.* at 52. The court defined an equitable lien as "the right to have the property subjected in a court of equity to the payment of the claim." *Id.* (quoting *Osborne v. McCormack*, 176 S.W.2d 824, 824-25 (Tenn. 1944)).

Despite BNYM's argument that the holding in *Holiday Hospitality* should dictate the outcome here, it is important to note that *Holiday Hosptality* does not address equitable subrogation. Restoring a released deed of trust to its priority position is not the same as equitably subrogating a deed of trust, as BNYM would have us believe. Although both remedies involve considerations of equity, the surrounding facts and evolution of the cases addressing the individual remedies are different enough that cases allowing a released deed of trust to be restored are not persuasive authorities to support a claimant's request for the equitable subrogation of its lien.

To determine whether or not a lienholder is entitled to equitable subrogation, a court must balance the equities of the parties competing for priority status. The Supreme Court in *Castleman Construction Company v. Pennington* explained that "the object of subrogation is to promote and accomplish justice and to prevent injustice." 432 S.W.2d 669, 673 (Tenn. 1968). The Court continued,

> Since subrogation is a remedy invented by courts of equity, they will move to administer it where the result will be an equitable one, but not to work an injustice to another in the defeat of an equal equity. . . . [T]he doctrine of subrogation [is] to be enforced only in favor of a meritorious claim where the equities and countervailing equities must be weighed.

*Id.* (citation omitted). The *Castleman* Court was clear that subrogation is not to be enforced against superior equities. *Id.* at 676. Thus, we must review the equities of both BNYM and of Pinnacle to determine where the balance lies in this case.

Equitable subrogation was discussed in great detail in *Dixon v. Morgan*, 285 S.W. 558 (Tenn. 1926). The Supreme Court reviewed the doctrine as applied in other jurisdictions and stated that only culpable negligence would bar the application of equitable subrogation in Tennessee. *Id.* at 562; *accord, Trustmark Nat'l Bank v. Deutsche Bank Nat'l Trust Co.*, 2010 WL 3269978, at *8-9 (Tenn. Ct. App. Aug. 19, 2010). The *Dixon* Court explained that for negligence to rise to the level of "culpable negligence," there must be a failure to perform some duty owed to someone other than to one's self. *Id.* (citation omitted).

The trial court found BNYM was not liable for culpable negligence because BNYM did not fail to perform a duty owed to another. Pinnacle contends a lender owes a duty to its

9

borrowers to record its mortgage interest properly and that the trial court erred in finding BNYM was not liable for culpable negligence. We disagree. The primary purpose of the registration laws is to protect the lienholder and innocent third party purchasers against secret and unrecorded liens. *Dixon*, 285 S.W. at 563; *see Marriott Employees' Federal Credit Union v. Harris*, 897 S.W.2d 723, 728 (Tenn. Ct. App. 1994) (lender owed no duty to borrower to monitor value of stock pledged as collateral for loan). The mortgage is effective between the original parties even it is unrecorded. Tenn. Code Ann. § 66-26-101. Thus, a bank's borrowers are not harmed by a bank's failure to record its lien properly. The harm is felt only by the bank itself. We therefore affirm the trial court's determination that BNYM did not engage in culpable negligence when it failed to record its mortgage in the proper county and when it failed to describe the Property accurately in its DOT.

BNYM next contends the trial court erred in finding Pinnacle would be prejudiced by subrogating BNYM's lien to Pinnacle's position. The amount of BNYM's loan was $1,143,000. An appraisal of the Property dating from 2007 indicates that the Property was valued at $1,600,000. If BNYM is given a priority position ahead of Pinnacle, there is a chance the Property will not have sufficient value to satisfy both BNYM's and Pinnacle's liens. This would cause financial harm to Pinnacle, which means Pinnacle would be prejudiced by granting BNYM equitable subrogation and placing BNYM's lien ahead of Pinnacle's two judgment liens.

According to BNYM, Pinnacle had no expectation of being a priority creditor when it made the loans to Mr. Goodman's companies in 2006 and 2007 because SunTrust and Fifth Third both had properly recorded liens on the Property. BNYM relies on *Trustmark National Bank v. Deutsche Bank National Trust Company* to support its position. The facts of *Trustmark* are similar to, but distinguishable from, those in this case. In *Trustmark*, the first lienholder was a judgment creditor with a lien in the amount of $1,118,550. About a year later, Trustmark National Bank recorded a second judgment lien in the amount of $219,349. FirstBank then recorded a third judgment lien in the amount of $356,794. *Id.* at *1. The first lienholder released her lien against the property at issue after she received payment in partial satisfaction of her judgment from another individual, who made the payment as consideration for her purchase of the property. Long Beach Mortgage Company financed this purchase of the property with a purchase money mortgage and received as security two deeds of trust executed in its favor.[4] *Id.*

The result of the sale and release of the initial judgment creditor's lien was that the liens held by Trustmark and FirstBank moved up to first and second positions from second and third positions. The lien that was by then held by Long Beach's successor, Deutsche

---

[4]Deutsche Bank later succeeded to Long Beach's interest in the property.

Bank, occupied the most junior position. *Id.* Deutsche Bank took the position that its lien should be equitably subrogated to the more senior lienholders and that it should occupy the priority position as creditor because it had satisfied the initial lienholder/judgment creditor's lien against the property and justice required that it succeed to that creditor's priority position. *Id.* at *2.

Trustmark and FirstBank filed motions for summary judgment and asked the trial court to rule as a matter of law that Deutsche Bank was not entitled to equitable subrogation. The trial court granted this relief, and the Court of Appeals reversed this judgment on appeal. The Court of Appeals did not rule that Deutsche Bank was entitled to equitable subrogation, but it held that the movants failed to allege undisputed facts negating an essential element of Deutsche Bank's claim for equitable subrogation or showing that Deutsche Bank could not establish an essential element of its claim at trial. *Id.* at *15.

In discussing equitable subrogation, the court stated: "Subrogation is not appropriate where the equities of the parties are equal, where the parties' rights are not clear, or where it would prejudice the legal or equitable rights of another." *Id*. at *9 (citing *Lawyers Title Ins. Corp. v. United Am. Bank*, 21 F. Supp.2d 785, 792 (W.D. Tenn. 1998)). The court explained that "[r]elevant to this balancing of equities is the degree of negligence of the party seeking subrogation." *Id*. (citing *Lawyers Title Ins. Corp*., 21 F. Supp.2d at 792). In response to Trustmark and FirstBank's arguments concerning the unfairness of equitable subrogation, the Court of Appeals wrote:

> Although we agree that it may be in a sense "unfair" to retrospectively remove a lienholder from the priority position it reasonably believed it occupied, that is the precise purpose of subrogation. Any complaint with the alleged unfairness of the procedure should be taken up in the balancing of the equities, which may account for any prejudice suffered by an intervening lienholder in reliance on its perceived priority position.

*Trustmark*, 2010 WL 3269978, at *11 n.10.

Comparing the relative positions of BNYM with Trustmark and FirstBank, we note the similarities as well as important distinctions. Like Trustmark and FirstBank, BNYM provided financing that led to the priority lienholders' release of their liens on the property securing the liens. However, unlike the situation in *Trustmark*, when Pinnacle registered its judgment liens with the Williamson County Register's Office, there were no other lienholders with respect to the Property because BNYM had mistakenly registered its mortgage in Davidson County.

11

Thus, whereas Trustmark and FirstBank initially occupied the positions of second and third lienholders when they filed their liens, their positions were only improved later, once the earlier lien on the property at issue was released. Pinnacle, on the other hand, held the first and second priority positions from the time it registered its judgment liens in 2009. Unlike Trustmark and FirstBank, Pinnacle had no reason to know a creditor existed that asserted a superior position until a year and a half later, when BNYM discovered the error and took steps to record its lien properly in Williamson County.

Having determined that Pinnacle could suffer financial harm if its position were moved down below that of BNYM, we must now consider the equities of the parties to determine whether equitable subrogation is warranted in this case. The Supreme Court made clear in *Castleman* that "regardless of the source of the right of subrogation, the right will only be enforced in favor of a meritorious claim and after a balancing of the equities." *Castleman*, 432 S.W.2d at 97.

BNYM is correct that, unlike its loan to Ms. Goodman, which is secured by a DOT on the Property, Pinnacle's loans to Mr. Goodman's companies were completely unrelated to the Property and were not secured by any interest in the Property. If the DOT Mr. and Ms. Goodman executed in favor of Countrywide had been registered in the proper county in 2007, when Countrywide made its loan to Ms. Goodman, and if the DOT included the correct legal description of the Property rather than an unrelated property Ms. Goodman owned in Davidson County, there is no doubt Pinnacle would have been the junior lienholder when it registered its judgment liens two years later, in 2009.

In other words, if Countrywide had taken the steps it should have taken to protect its interest in the Property, BNYM, as the successor in interest, would not be seeking the equitable remedy of subrogation. In contrast to BNYM, Deutsche Bank did not engage in any negligent act that led to its inferior creditor position. According to the *Trustmark* court, "[A] party's failure to protect its interests despite the opportunity and ability to do so is yet another factor courts should consider when weighing the equities between the parties." *Trustmark*, 2010 WL 3269978, at *14.

BNYM contends that Countrywide is not the first entity to make the mistake of recording an interest in the Property in Davidson County rather than Williamson County, and that it should not be penalized for making this mistake. BNYM relies on the following in making this argument: the title report prepared by a third party indicated the Property was located in Davidson County; a different company Countrywide relied upon registered the DOT in Davidson County rather than in Williamson County; another bank in an unrelated transaction had made the same mistake in 1997 that Countrywide made when it recorded a deed of trust with regard to the Property in Davidson County rather than Williamson County;

12

the Property was located very close to the Davidson County line and was easily mistaken for being located in Davidson County; and the Internal Revenue Service had made the same error in 2009 and had recorded a notice of tax lien against Mr. Goodman with the Davidson County Register of Deeds, based on the address of the Property.

Pinnacle counters BNYM's argument that its mistakes were excusable by pointing out the following documents that were in BNYM's possession: an appraisal for the Property performed in May 2007 indicating the Property is in Williamson County; a government form regarding flood insurance dated June 2007 indicating the Property is in Williamson County; and a document from National Real Estate Information Services dated May 2007 identifying the Property as being in Williamson County. The record indicates that these documents were produced by BNYM to Pinnacle during discovery.

Pinnacle also points out that Countrywide was a sophisticated lender and contends no court has held a sophisticated lender is entitled to equitable subrogation when it has recorded a mortgage or deed of trust in the wrong county. The facts of *Mortgage Electronic Registration Systems, Inc. v. Church*, 423 F. App'x 564 (6th Cir. 2011), are remarkably similar to the facts here. In that case, the lender MERS recorded a mortgage on a piece of property in the wrong county, and the Internal Revenue Service later recorded a lien on the same property, but in the correct county. *Id.* at 564-65. MERS sought a declaration that its claim was superior to that of the United States based on equitable subrogation, which the United States Court of Appeals for the Sixth Circuit refused, using the rationale quoted by the trial court, namely, that Countrywide and BNYM were sophisticated lenders, precisely in the business of lending money with interests in property.

In balancing the equities between the parties, the negligence of the party seeking subrogation is a relevant factor. *Assoc. Home Equity Servs*, 2002 WL 459007, at *4. Subrogation will not be granted "when it would work injustice to the rights of those having equities." *Castleman*, 432 S.W.2d at 674. Taking all the facts of this case into consideration, we believe the mistakes made could have been avoided with just a little effort if Countrywide had paid closer attention to the recording of its DOT. Similarly, BNYM, as successor-in-interest to the DOT, should have been able to avoid having to seek equitable subrogation if Countrywide had paid close attention to their registering of the DOT. BNYM did not acquire any greater interest than Countrywide had.

Pinnacle, which did everything it was supposed to do to protect its interests by obtaining judgments with respect to its loans to Mr. Goodman's companies and then filing these judgments with the proper Register's Office in Williamson County, should not be penalized by having BNYM subrogated to its priority position as creditor. As was the case in *Church*, Countrywide was not just a sophisticated party; its sophistication was in the

13

precise area in which the mistake was made -- lending money and securing its loans with an interest in the borrower's property. As the Arkansas bankruptcy court aptly stated in the case *In re: May*:

> No entities are better situated to properly perfect interests in land than banks, whose purposes are to maximize profit derived from lending money and to ensure the repayment of their loans by taking an interest in a borrower's collateral. Courts can not underwrite Defendants' business risks under the guise of equity when Defendants themselves failed to take minimal steps to ensure their interests were properly protected.

310 B.R. 405, 419 (E.D. Ark. 2004) (quoted with approval by *Anchor Pipe Co., Inc. v. Sweeney-Bronze Dev., LLC*, 2012 WL 3144638, at *6 (Tenn. Ct. App. Aug. 12, 2012)).

We conclude that, based on the undisputed facts of this case, BNYM is not entitled to equitable subrogation as a matter of law. Accordingly, we affirm the trial court's judgment granting Pinnacle's motion for summary judgment and denying BNYM's motion for summary judgment on this issue.

## B. Dana Goodman's Arguments

Ms. Goodman argues the trial court erred in granting either motion for summary judgment with regard to equitable subrogation because necessary parties have not been added to the lawsuit. Ms. Goodman contends that Countrywide, Bank of America, Mortgage Electronic Registration Services, Inc. ("MERS"), and the holders of the Countrywide note are indispensable and necessary parties. In addition, Ms. Goodman asserts Pinnacle failed to carry its burden of proof on the issue of equitable subrogation and that BNYM failed to carry its burden of proof on the issue of reformation of the DOT.

Ms. Goodman relies on Rule 19.01 of the Tennessee Rules of Civil Procedure to support her claim that necessary parties should be added to this case. Rule 19.01 provides:

> A person who is subject to service of process shall be joined as a party if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest, or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reasons of the claimed interest. If the person has not been so

14

joined, the court shall order that the person be made a party. If the person properly should join as a plaintiff but refuses to do so, he or she may be made a defendant, or in a proper case, an involuntary plaintiff.

According to Rule 19.01, a person must be joined as a party to an action only if complete relief cannot be accorded among those already named as parties or a person not named claims an interest relating to the subject of the action. The only issues in this case are (1) whether the DOT with respect to the Property should be reformed and (2) whether BNYM is entitled to equitable subrogation vis-à-vis Pinnacle. The only persons affected by the resolution of these issues are BNYM, Pinnacle, and the Goodmans, all of whom are parties in this case.

Ms. Goodman points to no evidence in the record that without the addition of persons she lists complete relief cannot be accorded among those already parties in this action.[5] Moreover, Ms. Goodman fails to show that any of the persons she names have any interest in the subject matter of this case. If none of the persons Ms. Goodman alleges are necessary parties have any interest in the issues of this case, Ms. Goodman is not at risk of incurring double, multiple, or otherwise inconsistent obligations.

Ms. Goodman also relies on Tenn. Code Ann. § 29-14-107(a), which provides:

When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings.

This statute does not further Ms. Goodman's argument because all persons who have or claim any interest in this case are already parties.

Ms. Goodman next argues the evidence was insufficient to support the trial court's grant of summary judgment to BNYM on the issue of reformation and to Pinnacle on the issue of equitable subrogation. The record is unequivocal that Countrywide's loan to Ms. Goodman in 2007 was meant to be secured by the Property and that the legal description of the property attached as an exhibit to the DOT was meant to be for the Property, not for an unrelated parcel Ms. Goodman owned in Davidson County. Ms. Goodman, therefore, cannot succeed on her argument that the trial court erred in granting BNYM summary judgment on

---

[5]The evidence in the record is unrefuted that Countrywide was purchased by Bank of America, MERS was just a nominee for Countrywide, and the DOT was assigned to BNYM, f/k/a Bank of New York.

15

the issue of reformation of the DOT.[6]

Turning to the issue of equitable subrogation, Ms. Goodman argues, *inter alia*, that equitable subrogation is inappropriate to be decided on summary judgment because there are too many questions of fact involved with balancing the equities of the parties. Equitable subrogation affects only the priority of the creditors that have a lien on the Property, however, and it does not directly affect or involve the debtor's obligations to her creditors. Regardless of whether Pinnacle or BNYM has the first position as creditor, Ms. Goodman's debt to BNYM remains.

We recognize that the priority of creditors may affect BNYM's ability to satisfy its lien from the proceeds of a sale of the Property and that the priority of creditors thus may have a real effect on Ms. Goodman. However, the material facts relative to the issue of equitable subrogation were undisputed, making the issue of equitable subrogation appropriate for adjudication by summary judgment. Ms. Goodman's argument on this issue, therefore, is without merit.

## V. CONCLUSION

For the reasons stated above, we affirm the trial court's judgment granting BNYM's motion for summary judgment on the issue of reformation and affirm the trial court's judgment granting Pinnacle's motion for summary judgment on the issue of equitable subrogation. Costs shall be assessed against the appellant, The Bank of New York Mellon, f/k/a The Bank of New York.

_____
BEN H. CANTRELL, SR. JUDGE

---

[6]As noted earlier, Pinnacle does not appeal the trial court's grant of summary judgment on this issue.

16